Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 15, 2020

**2020 CO 54**

**No. 17SC564,** *Hoggard v. People*—Constructive Amendments—Jury
Instructions—Instructional Error.

In this case, the supreme court first considers whether a jury instruction on

the charge of attempt to influence a public servant constitutes plain error when the

instruction fails to apply an intent requirement to every element of that offense.

The supreme court then considers whether a charge of second-degree forgery is

constructively amended when the trial court instructs the jury on the elements of

felony forgery.  The supreme court first holds that even if the instruction in this

case on the charge of attempt to influence a public servant was erroneous because

it did not apply an intent requirement to every element of the crime, any error was

not plain.  The supreme court also holds that although the trial court erred in

including language from the felony forgery statute when instructing the jury on

the second-degree forgery charge, the instruction did not amount to a constructive

amendment and the error was not plain. Accordingly, the judgment of the court

of appeals is affirmed on different grounds.

**2020 CO 54**

**Supreme Court Case No. 17SC564**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1393

**Petitioner:**

Shawna Lee Hoggard,

v.

**Respondent:**

The People of the State of Colorado.

**Judgment Affirmed**
*en banc*
June 15, 2020

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Meghan M. Morris, Deputy Public Defender
  *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Kevin E. McReynolds, Assistant Attorney General
  *Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.
**JUSTICE MÁRQUEZ** concurs in part and dissents in part.

¶1    While Petitioner Shawna Lee Hoggard and her ex-husband, Javier,[1] were in the midst of a child custody dispute,[2] she forwarded an email to their court-appointed child and family investigator ("CFI").  Hoggard told the CFI that the email, which contained concerning comments and an apparent threat, had been sent to her from Javier.  Javier subsequently claimed that while he had written parts of the email, he had not written the concerning portions.  He then contacted law enforcement to report that Hoggard had falsified the email.

¶2    The People charged Hoggard with attempt to influence a public servant and second-degree forgery.  At trial, when the court instructed the jury on the charge of attempt to influence a public servant, it did not inform the jury that the mens rea of "with the intent" applied to all elements of the crime and not just a single element.  Additionally, when the court instructed the jury on the charge of second-degree forgery, a class 1 misdemeanor, it included language in one element from the offense of felony forgery, a class 5 felony.[3]  Hoggard did not object to

_____

[1] For convenience, we refer to the Petitioner as "Hoggard" and her ex-husband as "Javier."

[2] Because both the parties and the appellate division utilize the term "custody," we will adopt that term for the purposes of this opinion to mean "parental responsibilities" as it is defined under section 14-10-103(4), C.R.S. (2019).

[3] As distinct from second-degree forgery, we refer to the crime of "forgery" under section 18-5-102, C.R.S. (2019), as "felony forgery" for the sake of clarity.

either instruction. The jury found her guilty of both original charges. Hoggard appealed, and a division of the court of appeals upheld her convictions. Hoggard now argues again that the trial court's instructions constitute reversible error.[4] We disagree.

¶3    First, we hold that even if the instruction on attempt to influence a public servant was erroneous, any error was not plain. Second, we hold that, although the trial court erred in including language from the felony forgery statute when instructing the jury on the second-degree forgery charge, the instruction did not amount to a constructive amendment and the error was not plain. Hence, we affirm the court of appeals' judgment on different grounds.

---

[4] We granted certiorari to review the following issues:

1. Whether a charge of second degree forgery is constructively amended when the trial court instructs the jury on the elements of felony forgery.

2. Whether reversible error occurs when the defendant is charged with second degree forgery and the court instructs the jury on the elements of felony forgery.

3. Whether an instruction on the charge of attempt to influence a public servant constituted plain error because it erroneously failed to apply an intent requirement to every element of that offense.

We address the charge of attempt to influence a public servant first, as it is the more serious charge.

## I. Facts and Procedural History

¶4      At a temporary orders hearing, the court gave Javier full custody of his and Hoggard's sons; additionally, the court assigned a CFI to investigate and make parenting recommendations regarding permanent orders.  During the CFI's investigation, Hoggard forwarded the CFI a chain of emails between her and Javier.  These emails included several concerning comments, including an apparent threat that Javier made against Hoggard.  Specifically, the email that Hoggard forwarded to the CFI stated:

> Let me know when and where you have scheduled a court order[ed] supervised visit and *I will decide if they can go.  I don't like you and I'll make sure with all my power to destroy you.*
>
> Also, the boys have their own phones as you should know and they are responsible for answering their own phones.  They know, because [my wife] and I have told them several times that they can speak with you whenever they want.
>
> *It's obvious that they don't want to ever talk to you or your family again.  Why don't you just leave them alone and let them enjoy the family they've chose[n].  It's mine.*

(Emphases added.)

¶5      The CFI then forwarded the email chain to Javier to ascertain his intent in writing the email.  In response, Javier denied writing the concerning portions of the email and forwarded to the CFI what he represented to be the unaltered email, which did not include the above-emphasized language.  Javier also contacted law enforcement to report that Hoggard had falsified the email.

¶6 Ultimately, the People charged Hoggard with one count of attempt to influence a public servant, a class 4 felony, and one count of second-degree forgery, a class 1 misdemeanor. At trial, Hoggard argued that she did not alter the email, nor did she know how the alterations occurred.

¶7 After the close of evidence, the People tendered a proposed instruction for attempt to influence a public servant that informed the jury that the mental state of "with the intent" only applied to one element of the crime:

> The elements of the crime of Attempt to Influence a Public Servant are:
>
> 1. That the defendant,
>
> 2. in the State of Colorado, at or about the date and place charged,
>
> 3. attempted to influence a public servant,
>
> 4. by means of deceit
>
> 5. *with the intent to alter or affect the public servant's decision, vote, opinion, or action concerning any matter*,
>
> 6. which was to be considered or performed by the public servant or the agency or body of which the public servant was a member.

(Emphasis added.) While this instruction largely tracked the text of the statute, it did not require the jury to find that Hoggard acted intentionally with regard to all elements of the crime. With no objection from Hoggard, the trial court provided the People's tendered instruction to the jury.

¶8    The People also tendered the following elemental instruction for second-degree forgery:

> The elements of the crime of Second Degree Forgery are:
>
> 1.  That the defendant,
>
> 2.  in the State of Colorado, at or about the date and place charged,
>
> 3.  with intent to defraud,
>
> 4.  falsely made, completed, altered, or uttered a written instrument,
>
> 5.  *which was or purported to be, or which was calculated to become or represent if completed an instrument which does or may evidence, create, or otherwise affect a legal right, interest, obligation, or status:* namely, an email.

(Emphasis added.)   The first four elements tracked the second-degree forgery statute; however, the fifth element derived some of its language from the felony forgery statute.  Again, Hoggard did not object, and the trial court provided the jury with the People's proposed instruction.  The jury then found Hoggard guilty of both attempt to influence a public servant and second-degree forgery.

¶9    Hoggard appealed, contending that the trial court reversibly erred in instructing the jury that the mental state of "with the intent" of attempt to influence a public servant applied to only one element.  Additionally, Hoggard argued that instructing the jury on the elements of felony forgery resulted in a constructive amendment of the second-degree forgery charge and, therefore, amounted to structural error.

¶10     The court of appeals disagreed and affirmed Hoggard's convictions. *People v. Hoggard*, 2017 COA 88, ¶ 56, __ P.3d __.  The court held that the trial court's instruction on the attempt to influence a public servant charge did not constitute plain error because there was no reasonable probability that the error contributed to Hoggard's conviction. *Id.* at ¶ 55.  The court also held that the forgery instruction did not constitute a constructive amendment because the court determined that second-degree forgery is a lesser included offense of felony forgery. *Id.* at ¶¶ 27–33.  Additionally, it concluded that the trial court did not commit plain error when it instructed the jury on the forgery charge because the error did not prejudice Hoggard. *Id.* at ¶ 35.

¶11     Hoggard petitioned this court for review of the court of appeals' decision. We granted certiorari and now affirm the court of appeals' judgment on different grounds.

## II.  Standard of Review

¶12     We review jury instructions de novo to determine whether they accurately inform the jury of the governing law. *People v. DeGreat*, 2018 CO 83, ¶ 15, 428 P.3d 541, 544. Similarly, whether jury instructions constitute a constructive amendment that subjects a defendant to the risk of conviction for an uncharged offense is a question of law that we review de novo. *See id.*

¶13    When a defendant fails to object to a trial court's jury instructions, the instructions are reviewed for plain error. *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001). For an error to be deemed plain, it must be both obvious and substantial. *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005). This means the error must "so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Weinreich*, 119 P.3d 1073, 1078 (Colo. 2005).[5]    In the jury instruction context, "the defendant must 'demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction.'" *Miller*, 113 P.3d at 750 (quoting *Garcia*, 28 P.3d at 344).

## III.  Attempt to Influence a Public Servant

¶14    We first determine whether the trial court plainly erred when it instructed the jury on the attempt to influence a public servant charge. Assuming without deciding that an error occurred here, we consider whether that error was plain. Because we determine that any error was neither obvious nor substantial, we

---

[5] Some cases treat obviousness, substantiality, and fundamental fairness as three distinct requirements that must be satisfied in order for an error to be plain. *See Lehnert v. People*, 244 P.3d 1180, 1185 (Colo. 2010). Regardless of the test used, however, we conclude that the instructional errors here were not plain. Thus, we need not clarify that standard today.

9

conclude that any infirmity in the trial court's instruction on the attempt to influence a public servant charge did not rise to the level of plain error.

## A. Law

¶15 The General Assembly is vested with the authority both to establish the legal components of criminal liability and to define criminal conduct. *Copeland v. People*, 2 P.3d 1283, 1286 (Colo. 2000). Except in those statutes enumerating strict liability crimes, a defendant cannot face criminal sanctions "unless the prosecution establishes that, in addition to committing a proscribed act, the person acted with the culpable mental state required for the particular crime." *Id.* Moreover, section 18-1-503(4), C.R.S. (2019), provides that "[w]hen a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears."

## B. Application

¶16 Hoggard contends that the instruction on attempt to influence a public servant was plainly erroneous because it failed to apply the intent requirement to all elements of the offense, thereby contravening section 18-1-503(4). Assuming without deciding that an error occurred, we must determine whether that error was plain.

10

¶17     To begin, we must consider whether any error was obvious. *Miller*, 113 P.3d

at 750.   Turning first to the statute, section 18-8-306, C.R.S. (2019), prohibits a

person from attempting to influence a public servant by means of deceit with the

intent to affect the public servant's decision, opinion, or action:

> Any person who attempts to influence any public servant by means
> of deceit or by threat of violence or economic reprisal against any
> person or property, *with the intent thereby to alter or affect the public
> servant's decision, vote, opinion, or action concerning any matter which is
> to be considered or performed by him or the agency or body of which he is a
> member*, commits a class 4 felony.

(Emphasis added.)   The trial court's instruction on this charge substantially

tracked the language of the statute:

> The elements of the crime of Attempt to Influence a Public Servant
> are:
>
> 1.  That the defendant,
>
> 2.  in the State of Colorado, at or about the date and place charged,
>
> 3.  attempted to influence a public servant,
>
> 4.  by means of deceit
>
> 5.  *with the intent to alter or affect the public servant's decision, vote,
>     opinion, or action concerning any matter*,
>
> 6.  which was to be considered or performed by the public servant or
>     the agency or body of which the public servant was a member.

(Emphasis added.)  This instruction included the requisite mental state — "with the

intent" — as it is stated in section 18-8-306.  *See Weinreich*, 119 P.3d at 1076 (noting

that jury instructions should substantially track the statutory language describing

11

the crime).  Furthermore, although the instruction did not apply the mental state to all subsequent elements, it did track the model instruction that existed at the time of Hoggard's trial:

> The elements of the crime of attempt to influence a public servant are:
>
> 1.  That the defendant,
>
> 2.  in the State of Colorado, at or about the date and place charged,
>
> 3.  attempted to influence a public servant,
>
> 4.  [by means of deceit] [by threat of [violence] [economic reprisal] against any person or property],
>
> 5.  *with the intent to alter or affect the public servant's [decision] [vote] [opinion] [action] concerning any matter*,
>
> 6.  which was to be considered or performed by [him] [the agency or body of which he was a member].

CJI-Crim. 1st 19:13 (1983) (emphasis added).  And while simply following model instructions does not provide "safe harbor that insulates instructional error from reversal," *Garcia v. People*, 2019 CO 64, ¶ 22, 445 P.3d 1065, 1069, it certainly makes any error that occurred here less obvious.

¶18    Moreover, the trial court's instruction adhered to our decision in *People v. Norman*, 703 P.2d 1261 (Colo. 1985).  In *Norman*, we analyzed section 18-8-306 for a sufficiency of the evidence claim.  *Id.* at 1269.  We explained that the critical elements of attempt to influence a public servant are "(1) an attempt to influence a public servant (2) by means of deceit or by threat of violence or economic reprisal

(3) *with the intent to alter or affect the public servant's decision or action.*" *Id.* (emphasis added); *see also People v. Janousek*, 871 P.2d 1189, 1194 (Colo. 1994) (providing the same "critical elements" of attempt to influence a public servant). The trial court's instruction here conformed with our recitation of the critical elements of the crime in *Norman*. Thus, because the instruction here comported with the language of the statute, the model instruction as it existed at the time of Hoggard's trial, and our precedent, we conclude that any error was not obvious.

¶19 Although the determination that any error was not obvious resolves the issue of whether any infirmity in the instruction was plain, we consider the question of the impact of any error on the verdict. Specifically, we consider whether there is a reasonable possibility that any instructional error contributed to Hoggard's conviction for attempt to influence a public servant. *See Miller*, 113 P.3d at 750. Hoggard's defense on this charge pertained to identity. During closing argument, Hoggard's counsel stated that "Shawna Hoggard is not the only person that could have altered [the email]." Significantly, Hoggard's defense focused on *who* altered the email and not *why* the email was altered. In other words, Hoggard did not argue about intent. Thus, we conclude that no reasonable possibility exists that any instructional error on this charge contributed to Hoggard's conviction.

¶20 In sum, because we conclude that any error was neither obvious nor substantial, we hold that even if the instruction on attempt to influence a public servant was erroneous, any error was not plain.[6]

## IV. Second-Degree Forgery

¶21 We now turn to whether the trial court's forgery instruction constituted a constructive amendment of Hoggard's original second-degree forgery charge. Because we conclude that no constructive amendment occurred but that the instruction was nevertheless erroneous, we next determine whether the error requires reversal. We ultimately conclude that it does not because the error did not prejudice Hoggard and thus was not plain.

## A. Law

¶22 The U.S. and Colorado Constitutions guarantee defendants the right to be notified of the charges against them. U.S. Const. amend. VI; Colo. Const. art. II, § 16. "Because the notice requirement lies at the foundation of the due process of law," the prosecution cannot require a defendant "to answer a charge not

---

[6] Because we conclude that any alleged error in the trial court's instruction on the attempt to influence a public servant charge was not plain, we decline to address whether the General Assembly intended to limit the application of the mental state of "with the intent" to only certain elements of the crime.

14

contained in the information." *People v. Madden*, 111 P.3d 452, 455 (Colo. 2005) (citing *Schmuck v. United States*, 489 U.S. 705, 717 (1989)).

¶23 In Colorado, the prosecution provides a defendant with notice through the filing of a complaint, indictment, or information. § 16-5-101(1), C.R.S. (2019). An information is constitutionally adequate when "it advises the defendant of the charges he is facing so that he can adequately defend himself and be protected from further prosecution for the same offense." *Cervantes v. People*, 715 P.2d 783, 785 (Colo. 1986) (quoting *People v. Albo*, 575 P.2d 427, 429 (Colo. 1978)). This notice requirement ensures that the defendant "is not taken by surprise by the evidence offered at trial." *Id.*

¶24 A jury instruction that alters the charging instrument is constitutionally inadequate when it constructively amends the original charge. And a constructive amendment occurs when the instruction "changes an essential element of the charged offense and thereby alters the substance of the charging instrument." *People v. Rodriguez*, 914 P.2d 230, 257 (Colo. 1996). A difference between the charging instrument and a jury verdict contravenes a defendant's constitutional rights when it "effectively subject[s] [the] defendant to the risk of conviction for an offense that was not originally charged." *Id.* (quoting *United States v. Mosely*, 965 F.2d 906, 915 (10th Cir. 1992)).

15

¶25   With this framework in mind, we now consider whether the trial court's forgery instruction here amounted to a constructive amendment of Hoggard's second-degree forgery charge.

## B. Application

¶26   As relevant here, the General Assembly defined felony forgery under section 18-5-102(1), C.R.S. (2019), to apply to specific types of written instruments, including instruments that affect a legal right:

> (1) A person commits forgery, if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument *which is or purports to be, or which is calculated to become or to represent if completed*:
>
> . . .
>
> (c) A deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, or other instrument *which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status . . . .*

(Emphases added.)   The General Assembly defined second-degree forgery similarly, but provided that it covers those types of documents *not* contained within the felony forgery statute:

> A person commits second degree forgery if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument *of a kind not described in section 18-5-102 . . . .*

§ 18-5-104(1), C.R.S. (2019) (emphasis added).

16

¶27 The trial court in this case provided the jury with the following forgery instruction, which included in element 5 the "legal right" language found in the felony forgery statute:

The elements of the crime of Second Degree Forgery are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. with intent to defraud,

4. falsely made, completed, altered, or uttered a written instrument,

5. *which was or purported to be, or which was calculated to become or represent if completed an instrument which does or may evidence, create, or otherwise affect a legal right, interest, obligation, or status:* namely, an email.

(Emphasis added.) Clearly, the trial court added language that is not contained in the second-degree forgery statute. We have previously noted that "[a] trial court has a duty to instruct the jury correctly on the law applicable to the case." *Weinreich*, 119 P.3d at 1076. By including language from the felony forgery statute, the trial court erred. But that does not necessarily mean that the error constituted a constructive amendment.

¶28 In arguing that the trial court's forgery instruction amounted to a constructive amendment, Hoggard contends that second-degree forgery and felony forgery are mutually exclusive crimes because they apply to mutually exclusive sets of documents. Thus, in her view, the jury found that she committed

17

*felony* forgery, meaning it simultaneously acquitted her of the charged offense of *second-degree* forgery.

¶29     In making this argument, Hoggard contends that our decision in *People v. Shields*, 822 P.2d 15 (Colo. 1991), is dispositive. In *Shields*, we considered whether the first- and second-degree sexual assault statutes in effect at the time created mutually exclusive crimes. *Id.* at 18. Both offenses required proof that the defendant caused the victim's submission to sexual penetration or intrusion. *Id.* at 19. The difference between the two crimes was the means by which that submission was caused: The second-degree sexual assault statute required that the defendant do so by means "other than those set forth in [the first-degree sexual assault statute]." *Id.*; *see also* § 18-4-403(1), C.R.S. (1986). We concluded that the crimes were mutually exclusive, reasoning that a defendant who caused the victim's submission under the first-degree sexual assault statute could not simultaneously cause submission through means proscribed by the second-degree sexual assault statute. *Shields*, 822 P.2d at 19.

¶30     But this case differs from *Shields*. Under the statutes at issue in *Shields*, a defendant could only engage in *either* conduct proscribed by the first-degree sexual assault statute *or* conduct proscribed by the second-degree sexual assault statute. But in this case, the trial court's forgery instruction required that the jury find that Hoggard forged an email and not a specific written instrument included

in the felony forgery statute, such as a deed, will, codicil, contract, assignment, commercial instrument, promissory note, or check. The forgery instruction simply placed an additional burden on the prosecution to prove more about that email. In other words, the forgery instruction required the prosecution to prove not only that the document was an email, but also that the email had some sort of legal impact. In this way, the effect of the additional language in the forgery instruction was that it elevated the import of the email that was forged; it did not require the prosecution to prove that the email was an entirely different type of document. Thus, we are not persuaded by Hoggard's contention that *Shields* controls. But we must still consider whether the trial court's erroneous instruction nevertheless amounted to a constructive amendment.

¶31 As discussed above, a constructive amendment occurs when the court "changes an essential element of the charged offense and thereby alters the substance of the charging instrument." *Rodriguez*, 914 P.2d at 257. Thus, to determine whether a constructive amendment occurred here, we must compare element 5 of the trial court's forgery instruction to the initial notice that Hoggard received.

¶32 The information originally charged Hoggard with second-degree forgery under section 18-5-104, but it did not state what document was allegedly forged. Prior to trial, however, the court granted the People's motion to amend the

information to specify that Hoggard was accused of forging an email. As a result, Hoggard was on notice that the prosecution had to prove that she, with the intent to defraud, falsely made, completed, altered, or uttered a document, which in this case was an email. *See* § 18-5-104(1). At trial, the instruction required the jury to find that Hoggard committed all of these acts. Indeed, the first four elements of felony forgery and second-degree forgery are the same. Element 5, the erroneous portion of the trial court's forgery instruction, stated that the document forged either "was or purported to be, or . . . was calculated to become or represent if completed[,] an instrument which does or may evidence, create, or otherwise affect a legal right, interest, obligation, or status: namely, an email." To be sure, some of this language was derived from the felony forgery statute—that the document "affect[ed] a legal right, interest, obligation, or status." But ultimately, the jury was asked if Hoggard forged an email, and an email is *not* one of the written instruments specifically identified in the felony forgery statute. In effect, the erroneous language imported from the felony forgery statute merely required the prosecution to prove *more* about the email; it did not require proof that the document was *different* from an email.

¶33    In simple terms, Hoggard was accused of forging an email, and she was found guilty of forging an email. Therefore, she received sufficient notice of the charge that she was convicted of, and she could adequately prepare to defend

20

against it. Accordingly, we hold that, although the trial court erred in including language from the felony forgery statute when instructing the jury on the second-degree forgery charge, the instruction did not amount to a constructive amendment.[7] Thus, we now consider whether the trial court's error nevertheless requires reversal.[8]

## C. Plain Error

¶34 Hoggard contends that even if no constructive amendment occurred, the trial court's instruction nevertheless amounted to plain error. For an error to be deemed plain, it must be both obvious and substantial. *Miller*, 113 P.3d at 750. To begin then, we must first determine whether the error found in the trial court's forgery instruction was obvious. Unlike the second-degree forgery statute, the felony forgery statute prohibits a person from forging a written instrument that affects a legal right. *See* § 18-5-102(1)(c). And the trial court imported that

---

[7] We need not address the court of appeals' conclusion that second-degree forgery is a lesser included offense of felony forgery under section 18-1-408(5)(c), C.R.S. (2019), because we ultimately conclude that no constructive amendment occurred on separate grounds.

[8] Because we conclude that no constructive amendment occurred here, we need not consider whether such an amendment constitutes structural error. *Cf. People v. Rediger*, 2018 CO 32, ¶ 47 n.4, 416 P.3d 893, 903 n.4 (declining to consider the same question because a constructive amendment clearly took place, and the error was plain).

21

language from the felony forgery statute in its instruction. Thus, we conclude that the error here was obvious.

¶35 Next, we must consider whether the error was substantial. For an error to be deemed substantial, the defendant must demonstrate that the error caused her prejudice. *Miller*, 113 P.3d at 750. Hoggard argues that the error prejudiced her because it deprived her of the use of a potential defense at trial: "that she did not forge a document within the scope of the second-degree forgery statute." We disagree because the forgery instruction did not list specific types of written instruments that fall within the scope of the felony forgery statute, such as a deed or will; instead, it stated that the document was an email. The error in the forgery instruction simply required the prosecution to further prove that the email affected some type of legal right. Moreover, Hoggard knew well ahead of trial that the document at issue was an email. And Hoggard never disputed the type of document forged; instead, her defense pertained to identity. At trial, Hoggard's counsel argued that Hoggard did not alter the email purportedly written by Javier, telling the jury during her closing argument that "Shawna Hoggard is not the only person that could have altered [the email]." *See People v. Fichtner*, 869 P.2d 539, 543 (Colo. 1994) (When a trial court gives an erroneous instruction on a single element of an offense, it does "not rise to the level of plain error if that element was not at issue in the case."). Thus, we conclude that the instructional error was not

22

substantial because it did not cause Hoggard prejudice; hence, the error was not plain.

## V. Conclusion

¶36 For the foregoing reasons, we affirm the court of appeals' judgment on different grounds.

**JUSTICE MÁRQUEZ** concurs in part and dissents in part.

JUSTICE MÁRQUEZ, concurring in part and dissenting in part.

¶37    Shawna Hoggard was charged with misdemeanor second degree forgery. But the jury was instead instructed on the elements of felony forgery. The majority acknowledges that this was an obvious error. Maj. op. ¶ 34. Yet it concludes that the error did not prejudice Hoggard because there was no dispute that the forged document at issue was an email, and the error in the instruction "simply required the prosecution to further prove that the email affected some type of legal right." *Id.* at ¶ 35. I disagree.

¶38    Second degree forgery and felony forgery apply to *mutually exclusive* sets of written instruments. Specifically, a person commits second degree forgery only if she forges a "written instrument of a kind *not* described" in the felony forgery statute. § 18-5-104(1), C.R.S. (2019) (emphasis added). Here, the jury was expressly instructed that the document must be of a kind that *is* described in the felony forgery statute, namely, a document that "affect[ed] a legal right, interest, obligation, or status." § 18-5-102(1)(c), C.R.S. (2019). Thus, by returning a verdict of guilty in this case, the jury necessarily found beyond a reasonable doubt that the email at issue was a document that affected a legal right or interest. But to properly convict someone of second degree forgery, the jury was instead required to find, beyond a reasonable doubt, just the opposite. The erroneous instruction here amounted to a constructive amendment because it altered an essential

1

element of the charge of second degree forgery and allowed the jury to convict Hoggard of an uncharged crime. The instructional error here also means that the judgment of conviction that the trial court entered for second degree forgery is unsupported by the jury's verdict and must be reversed. Accordingly, I respectfully dissent in part.[1]

## I. Second Degree Forgery and Felony Forgery Are Mutually Exclusive Offenses.

¶39 The plain language of the forgery statutes reveals that second degree forgery and felony forgery are mutually exclusive offenses because they apply to mutually exclusive categories of forged documents.

¶40 Hoggard was charged with second degree forgery under section 18-5-104. Under that provision, "[a] person commits second degree forgery if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument *of a kind not described in section 18-5-102* [felony forgery] *or 18-5-104.5* [forgery of an academic record]." § 18-5-104(1) (emphasis added).

¶41 Section 18-5-102, the felony forgery statute, applies to specific types of forged documents, including money, § 18-5-102(1)(a); stocks and bonds, -102(1)(b); public records, -102(1)(d); government documents, -102(1)(e); lottery

---

[1] I agree with the majority that the trial court's instruction on the attempt to influence a public servant charge was not plain error. *See* maj. op. ¶¶ 14–20.

2

tickets, -102(1)(g); and false identification documents, -102(1)(h). Relevant here, the felony provision also prohibits the forgery of "[a] deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, *or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status*." § 18-5-102(1)(c) (emphasis added).

¶42    Similarly, section 18-5-104.5, C.R.S. (2019), specifically bars the use of a forged *academic record* (i.e., "a transcript, diploma, grade report, or similar document") to seek employment, admission to an institution of higher education, or a scholarship or similar financial assistance. § 18-5-104.5(1)–(2)(a).

¶43    Thus, on their face, these provisions apply to mutually exclusive categories of documents. Of critical importance here, and contrary to the majority's assertion, maj. op. ¶¶ 30, 32, to convict a person of second degree forgery, the prosecution must affirmatively prove that the forged document is "of a kind *not* described in section 18-5-102 or 18-5-104.5." § 18-5-104(1) (emphasis added); *see also* COLJI-Crim. 5-1:10 (2019). Thus, second degree forgery and felony forgery are mutually exclusive offenses. *Cf. People v. Shields*, 822 P.2d 15, 19 (Colo. 1991) (concluding that first and second degree sexual assault are mutually exclusive offenses).

## II. The Jury Instruction on the Elements of Felony Forgery Changed an Essential Element of the Charged Offense and Requires Reversal.

¶44    "Trial courts have a duty to instruct the jury on all matters of law applicable to the case."  *Roberts v. People*, 2017 CO 76, ¶ 18, 399 P.3d 702, 704–05; *see also People v. Weinreich*, 119 P.3d 1073, 1076 (Colo. 2005).  "We review jury instructions de novo to determine whether the instructions accurately informed the jury of the governing law."  *People v. DeGreat*, 2018 CO 83, ¶ 15, 428 P.3d 541, 544.

¶45    A constructive amendment occurs when a variance between the charging instrument and the charge for which a defendant is convicted "changes an essential element of the charged offense."  *People v. Rediger*, 2018 CO 32, ¶ 48, 416 P.3d 893, 903 (quoting *People v. Rodriguez*, 914 P.2d 230, 257 (Colo. 1996)).  Constructive amendments are constitutionally prohibited because they effectively subject a defendant to the risk of conviction for an offense not originally charged in the information.  *See Rodriguez*, 914 P.2d at 257.

¶46    Moreover, "[a] jury instruction should substantially track the language of the statute describing the crime; a material deviation from the statute can result in reversible plain error, depending on the facts of the case."  *Weinreich*, 119 P.3d at 1076.

¶47    Here, the People charged Hoggard with second degree forgery under section 18-5-104.  As discussed above, that statute applies to forgery of a document

"of a kind not described in section 18-5-102." § 18-5-104. But instead of being instructed on the elements of second degree forgery, the court erroneously instructed the jury on the elements of felony forgery:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. with intent to defraud,

4. falsely made, completed, altered, or uttered a written instrument,

5. *which was or purported to be, or which was calculated to become or represent if completed an instrument which does or may evidence, create, or otherwise affect a legal right, interest, obligation, or status:* namely, an email.

(Emphasis added.) Although the majority suggests that only the fifth element of this instruction "was derived from the felony forgery statute," maj. op. ¶ 32, in fact, the instruction as a whole sets out *every* element of felony forgery, *see* § 18-5-102(1), (1)(c). In short, the court instructed the jury on felony forgery, not second degree forgery. The following chart illustrates that the instruction given here changed an essential element of the charged offense:

5

| **Second Degree Forgery**<br>COLJI-Crim. 5-1:10 (2019) | **Felony Forgery**<br>COLJI-Crim. 5-1:03 (2019) | **Hoggard's Instruction** |
|---|---|---|
| That the defendant, | That the defendant, | That the defendant, |
| in the State of Colorado, at or about the date and place charged, | in the State of Colorado, at or about the date and place charged, | in the State of Colorado, at or about the date and place charged, |
| with intent, | with intent, | with intent to defraud, |
| to defraud, | to defraud, | |
| falsely made, completed, altered, or uttered a written instrument, | falsely made, completed, altered, or uttered a written instrument, | falsely made, completed, altered, or uttered a written instrument, |
| *that was not a* [list those items enumerated in sections 18-5-102 and 18-5-104.5 that bear a resemblance to the written instrument forming the basis for the charge]. | *which was, or which purported to be, or which was calculated to become or to represent if completed, a[n]… instrument which did or might evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status.* | *which was or purported to be, or which was calculated to become or represent if completed*[,] *an instrument which does or may evidence, create, or otherwise affect a legal right, interest, obligation, or status*: namely, an email. |

(Emphases added.)

¶48    The majority acknowledges that the instruction given to the jury "required the prosecution to prove . . . that the email had some sort of legal impact." Maj. op. ¶ 30. I agree. But that means that if the prosecution proved—and the jury found—that the forged email affected a legal right, then the jury found Hoggard committed the elements of felony forgery, *not* second degree forgery as charged.

¶49    Put simply, the erroneous instruction here changed an essential element of the charged offense and allowed the jury to convict Hoggard of an uncharged

crime. A different division of the court of appeals reached the identical conclusion in *People v. Riley*, 2015 COA 152, ¶¶ 9–17, 380 P.3d 157, 160–62, a case that, though not binding on this court, is both squarely on point and persuasive. Just as in this case, the defendant in *Riley* was charged with second degree forgery, but the jury was instructed on the elements of felony forgery. *Id.* at ¶ 12, 380 P.3d at 161. The *Riley* division concluded that the erroneous instruction "constituted a constructive amendment of the information because it changed an essential element of the charged offense and allowed the jury to convict [the] defendant of an uncharged crime." *Id.* at ¶ 15, 380 P.3d at 161. Reasoning that it is constitutionally impermissible to convict a defendant of a charge not contained in the information, the division reversed the defendant's conviction for second degree forgery. *Id.*

¶50 The majority correctly acknowledges that the error here was obvious. Maj. op. ¶ 34. I fully agree. But the majority goes on to conclude that the instructional error caused no harm because "the erroneous language imported from the felony forgery statute merely required the prosecution to prove *more* about the email; it did not require proof that the document was *different* from an email." Maj. op. ¶ 32; *see also id.* at ¶ 35 ("The error in the forgery instruction simply required the prosecution to *further* prove that the email affected some type of legal right." (emphasis added)). In other words, the majority concludes that there was no

7

prejudice here because the erroneous instruction merely required the prosecution to show more than it had to.

¶51     Although the majority carefully avoids framing its reasoning as the lesser-included-offense analysis used by the division below, *People v. Hoggard*, 2017 COA 88, ¶¶ 27–33, __ P.3d __, the logic it employs is indistinguishable. What the majority plainly implies is that proof of the elements of felony forgery necessarily established the elements of second degree forgery. But because the elements of the two offenses are mutually exclusive, the majority's logic fails.

¶52     In *Riley*, the People made essentially the same argument, namely, that reversal was not required because, by finding the elements of felony forgery, the jury necessarily found that the defendant committed the elements of second degree forgery. ¶ 16, 380 P.3d at 161–62. The division expressly rejected this logic. To the contrary, it reasoned, "[t]he jury's finding that the elements of felony forgery were met *precludes* a finding that the elements of second degree forgery were met." *Id.* (emphasis added). This is because "if the written instrument at issue was the kind described in section 18-5-102 (felony forgery), it necessarily could not also be 'of a kind *not described in section 18-5-102*.'" *Id.* (quoting § 18-5-104(1)).

¶53     The instructional error here was not only obvious, it was substantial, and therefore constitutes reversible plain error. *See Rediger*, ¶ 48, 416 P.3d at 903. The

error was substantial because the instruction "deviated materially from the . . . statute." *Weinreich*, 119 P.3d at 1078–79. Moreover, the error cast serious doubt on the reliability of Hoggard's conviction because the jury's guilty verdict on the elements of felony forgery logically dictates that the jury did *not* find all the elements of second degree forgery.

¶54 The majority also reasons that Hoggard was not prejudiced because her defense at trial centered on her identity, not the nature of the document. Maj. op. ¶ 35. But instructing the jury on the elements of a different offense than the one charged cannot be considered insubstantial where the two offenses are mutually exclusive. Moreover, "[a]s a matter of constitutional limitation, a criminal verdict may not be directed for the State nor a criminal conviction entered for an offense not authorized by the jury's verdict, no matter how overwhelming the evidence." *Halaseh v. People*, 2020 CO 35M, ¶ 6, __ P.3d __; *see also Medina v. People*, 163 P.3d 1136, 1140 (Colo. 2007) ("[C]ourts [are prohibited] from entering a conviction for an offense other than that authorized by a jury's guilty verdict. No matter how overwhelming the evidence, a sentencing court may not direct a verdict for the State." (citations omitted)).

### III. Conclusion

¶55 The erroneous instruction here altered an essential element of the charge of second degree forgery and allowed the jury to convict Hoggard of an uncharged

crime. Moreover, the instructional error here also means the jury's verdict simply does not support the judgment of conviction for second degree forgery. Hoggard's conviction for second degree forgery must be reversed because the error here was plain, *Rediger*, ¶ 54, 416 P.3d at 904, and resulted in entry of a judgment of conviction for an offense not supported by the jury's verdict, *Sanchez v. People*, 2014 CO 29, ¶ 19, 325 P.3d 553, 560 ("[T]he entry of a judgment of conviction for a crime not supported by a unanimous verdict beyond a reasonable doubt rises to the level of structural error, requiring reversal regardless of a sufficiently specific objection."). Accordingly, I respectfully dissent.