21CA1962 Peo v DiMarco 11-27-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 21CA1962
Boulder County District Court No. 18CR1835
Honorable Norma A. Sierra, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Sherry Okalani DiMarco,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Grove and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Nicole M. Mooney, Alternate Defense Counsel, Golden, Colorado, for Defendant-
Appellant

¶ 1    Defendant, Sherry Okalani DiMarco, appeals the judgment of conviction entered on a jury verdict finding her guilty of one count of conspiracy to commit sexual assault on a child by one in a position of trust.  DiMarco challenges her convictions on four grounds, contending that the trial court erred by (1) constructively amending the charges in its answer to a jury question and thereby violated her right to a unanimous verdict; (2) denying her motions for substitute counsel; and (3) failing to sever her codefendant's case from hers, resulting in severe prejudice.  She also claims her counsel's behavior during the trial deprived her of due process and a fair trial.  We address and reject each of her contentions.

## I.    Background

¶ 2    According to the trial evidence, Sherry DiMarco and her husband, Curtis, are the parents of six children: C.D., A.D., D.D., Li.D., Lu.D., and L.D.  In August 2017, all six children were placed in foster care after DiMarco and her husband were arrested on an unrelated charge.  While in foster care, the children engaged in behaviors that raised questions and concerns.  Eventually, several of the children accused their parents of sexual abuse.

¶ 3     C.D. testified that the codefendant washed him and his siblings in the shower, well past the age of independence. Some of the children testified that DiMarco was in the bathroom but not touching them. A.D. also said that the codefendant showered with him and his brothers and washed their genitals and buttocks. According to A.D.'s testimony, DiMarco had told them it was okay. A.D. said the codefendant also touched his penis in the kids' bedroom and that he was forced to touch DiMarco's vagina.

¶ 4     The prosecution charged DiMarco with sexual assault on a child by one in a position of trust, pattern of abuse, and conspiracy to commit sexual assault on a child by one in a position of trust.[1]

¶ 5     The prosecution charged the codefendant with sexual assault on a child (A.D.) by one in a position of trust, pattern of abuse; solicitation to commit aggravated incest (A.D. touching S.D.); solicitation to commit incest (A.D. touching Lu.D., Li.D., and D.D.); sexual assault on a child (Lu.D.) by one in a position of trust, pattern of abuse; solicitation to commit aggravated incest (Lu.D.

_____

[1] The prosecution originally also charged DiMarco with aggravated incest and conspiracy to commit aggravated incest but dismissed those charges against her before trial.

2

touching S.D.); solicitation to commit incest (Lu.D. touching Li.D., A.D., and D.D.); attempt to commit aggravated incest (Li.D.); sexual assault on a child (Li.D.) by one in a position of trust, pattern of abuse; and solicitation to commit incest (Li.D. touching A.D. and Lu.D.).

¶ 6     The codefendants were tried jointly, and both denied sexually abusing the children.  A jury convicted DiMarco of conspiracy and acquitted her of the sexual assault charge.  The court sentenced her to probation for ten years to life.

¶ 7     Concerning the codefendant, the jury hung on the solicitation to commit aggravated incest (A.D. touching S.D.) charge and acquitted him of the solicitation to commit aggravated incest (Lu.D. touching S.D.) charge.  It convicted him of the remaining charges.

## II.    Constructive Amendment and Unanimity

¶ 8     DiMarco contends that the trial court's answer to a jury question during deliberations constituted a constructive amendment and violated her right to a unanimous verdict.  We disagree.

## A.    Additional Facts

¶ 9    The prosecution originally charged DiMarco with two counts of conspiracy to commit sexual assault on a child by one in a position of trust, and neither charge named a specific victim. Defense counsel filed a pretrial motion to merge the counts into a single count of conspiracy and argued that under section 18-2-201(4), C.R.S. 2024, a person who conspires to commit multiple crimes is only guilty of one conspiracy if the crimes are part of a single criminal episode. The court took no action on the motion and said it would rule when it heard the evidence.

¶ 10    Before trial, the prosecutor dismissed all but one conspiracy charge. The court instructed the jury that DiMarco was charged with conspiracy to commit sexual assault on a child, position of trust, with A.D. and L.D.'s names in parentheses. Neither the elemental instructions for conspiracy nor sexual assault on a child, position of trust named a specific victim.

¶ 11    During deliberations, the jury asked, "With regards to charges listed with multiple victims, would we find guilty verdicts if we find guilt with one of the victims but not necessarily all of them? A [sic] example is charge #2 [conspiracy] with Mrs. DiMarco." The

prosecutor argued the answer should be "[y]es, but they have to agree unanimously on the act, that is the act and the victim that they're finding the charge for." Defense counsel argued that the answer should be no and that the "proper way to charge this would have been a separate conspiracy count for each child. Counsel asserted that because the prosecution had chosen to use the word "and" in the complaint, the jury had to find the conspiracy applied to both A.D. and L.D. Counsel argued that the jury needed to unanimously agree on both victims to sustain a conviction.

¶ 12 The prosecutor disagreed and asserted that a conspiracy charge did not require unanimity on a particular victim. The trial court agreed with the prosecutor and asked whether DiMarco wanted the jurors to identify a victim in the event of a guilty verdict. Counsel responded, "[W]e would object to any identification . . . [b]ecause we feel that the whole thing's wrong."

¶ 13 The court then answered the jury's question as follows: "Under the example you provided, if you find a guilty verdict as to any one of the multiple victims, you would return a verdict of guilty. You would return a verdict of not guilty if you find not guilty as to all victims."

## B.     Standard of Review and Applicable Law

¶ 14     Whether a variance from the charging document constitutes a constructive amendment is a question of law that we review de novo. *Hoggard v. People*, 2020 CO 54, ¶ 12. Constructive amendments do not require automatic reversal and instead, require reversal only if they prejudice a defendant's substantial rights. *Bock v. People*, 2024 CO 61, ¶¶ 23-24.

¶ 15     However, whether to provide the jury with additional written instructions in response to a question is within the trial court's sound discretion. *People v. Thornton*, 251 P.3d 1147, 1152 (Colo. App. 2010).

¶ 16     A constructive amendment occurs when a jury instruction "changes an essential element of the charged offense and thereby alters the substance of the charging instrument." *People v. Rediger*, 2018 CO 32, ¶ 48 (citation omitted); *see People v. Gallegos*, 260 P.3d 15, 26 (Colo. App. 2010) (A constructive amendment effectively "subjects a defendant to the risk of conviction for an offense not originally charged . . .").  In contrast, a simple variance occurs when the elements remain unchanged, but the trial evidence proves facts

materially different from those alleged in the indictment. *Campbell v. People*, 2020 CO 49, ¶ 45 (citation omitted).

¶ 17 Additionally, "[t]rial courts have a duty to correctly instruct juries on all matters of law." *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011). In Colorado, a defendant has a statutory right to a unanimous jury verdict. § 16-10-108, C.R.S. 2024; Crim. P. 23(a)(8); Crim. P. 31(a)(3); *People v. Linares-Guzman*, 195 P.3d 1130, 1134 (Colo. App. 2008). "Unanimity means only that each juror agrees that each element of the crime charged has been proved to that juror's satisfaction beyond a reasonable doubt." *Linares-Guzman*, 195 P.3d at 1134; *see People v. Lewis*, 710 P.2d 1110, 1116 (Colo. App. 1985).

¶ 18 "Generally, jurors need not agree about the evidence or theory by which a particular element is established . . . ." *People v. Vigil*, 251 P.3d 442, 447 (Colo. App. 2010); *see People v. Dunlap*, 124 P.3d 780, 815 (Colo. App. 2004) (the defendant was not deprived of his right to a unanimous verdict, even though the theft instruction included both the "without authorization" and "threat and deception" theories).

¶ 19    When the prosecution presents evidence of multiple distinct acts that could constitute the charged offense and the jury has a reasonable likelihood of disagreeing over which act was committed, the trial court must either (1) require the prosecution to elect the transaction on which it relies for the conviction or (2) provide a special instruction that the jury must unanimously agree that the defendant committed the same act or all of the acts. *People v. Archuleta*, 2020 CO 63M, ¶¶ 21-22; *People v. Hines*, 2021 COA 45, ¶ 50. However, a special unanimity instruction need not be given when a defendant is charged with a crime encompassing incidents that occurred in a single transaction. *Melina v. People*, 161 P.3d 635, 639-40 (Colo. 2007). In the context of a conspiracy charge, factors tending to show a single transaction include: (1) the acts alleged occurred during the same period; (2) the type of overt act alleged is the same; (3) the unlawful objective of the conspiracy is the same; (4) the method is the same; and (5) the same evidence would be relevant to the charges. *People v. Davis*, 2017 COA 40M, ¶ 18.

¶ 20    DiMarco first argues that the court's response constituted a constructive amendment because it permitted a conviction for conduct related to either victim rather than for both.  She reasons that the prosecutor's decision to use the conjunctive "and" in the charging document placed her on notice of and required the jury to find guilt as to both victims to convict her.  We disagree and conclude the court's response constituted neither a constructive amendment nor a simple variance.

¶ 21    As DiMarco acknowledges, section 16-5-202(3), C.R.S. 2024, provides that "[p]leading in either the conjunctive or the disjunctive shall place a defendant on notice that the prosecution may rely on any or all of the alternatives alleged."  Thus, DiMarco knew from the charging document's language that the prosecution could rely on one or both victims to prove the conspiracy charge.[2]  For that reason, we reject DiMarco's assertion that the word "and" somehow

---

[2] Although not argued, we note that defense counsel asked for the merger of the conspiracy charges before trial and argued that DiMarco could be convicted of only one conspiracy even if she conspired to commit multiple crimes, so long as they were part of a single transaction, a position contrary to her position on appeal.

permitted the jury to convict her based on different victims. We are equally unconvinced, based on the language of section 16-5-202(3), that the word "and" expanded the charge from one to two victims, thereby lowering the prosecution's burden of proof. DiMarco never objected and instead, specifically requested that the crime of conspiracy be reduced to one charge. Finally, DiMarco has not explained, nor can we see, how she was prejudiced.

¶ 22    We similarly reject DiMarco's argument that the court's response deprived her of a unanimous verdict because the response did not contain unanimity language or require a victim to be identified. With respect to identification, we conclude that DiMarco waived any argument that the jury should be required to identify the victim on which they agreed when defense counsel told the court he did not want the jury to do so. *See Rediger*, ¶ 39; *see also United States v. Olano*, 507 U.S. 725, 733 (1993). Therefore, we do not address it further.

¶ 23    Turning to unanimity, the record shows the court instructed the jury that its verdict had to be unanimous and specifically that "all of you must agree to all parts of it." And the jury's question, asking if it could return a guilty verdict based on a finding of guilt

as to one victim but not all, reveals its understanding of the unanimity requirement. Section 18-2-201(1) provides that

> [a] person commits conspiracy to commit a crime if, with the intent to promote or facilitate its commission, [she] agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime, or [she] agrees to aid the other person or persons in the planning or commission of a crime or of an attempt to commit such crime.

¶ 24    A jury need not unanimously decide "which of several possible means the defendant used to commit an element of the crime" but rather that the act of conspiracy to commit the crime was committed. *Davis*, ¶ 21 (finding that "[t]hough the prosecution alleged numerous overt acts in furtherance of the single conspiracy, that did not require unanimous agreement by the jurors as to the precise overt act [the] defendant committed" for a specific victim but rather conspiracy of the acts in general). The court's response told the jury that, in order to return a guilty verdict on the conspiracy charge, it had to unanimously agree that DiMarco had conspired to commit sexual assault against a particular victim but said nothing about the elements of the crime of conspiracy itself. We presume

11

the jury understood and followed this instruction. *Bondsteel v. People*, 2019 CO 26, ¶ 62.

¶ 25    Accordingly, we discern no error in the court's response.

### III.    Substitute Counsel

¶ 26    DiMarco next contends that the trial court erroneously denied her request for substitute counsel. We discern no abuse of discretion.

### A.    Additional Facts

¶ 27    Before trial, DiMarco's counsel filed a motion to withdraw, alleging that there was a "substantial and irreconcilable conflict of interest." The motion did not detail the conflict but stated that DiMarco did not oppose it. The court conducted an ex parte hearing.

¶ 28    Counsel explained that he was vaccinated and that he had two high-risk children (ages twenty-three and twenty-five) with autoimmune diseases that placed them at a high risk of contracting COVID-19. He said neither child lived at home, but that they were in his home daily. He further explained that DiMarco was not vaccinated, would not vaccinate, and refused to wear a mask. He indicated he would "love to try this case," but that he had to put his

family first and that his wife was adamant that he not sit with an unvaccinated and unmasked person for two weeks. Counsel said he was willing to go to jail for contempt if the court did not find that this situation constituted a conflict.

¶ 29 After asking some clarifying questions, the court found no conflict because counsel's children did not live at his home, they were independent adults who did not depend on him for the daily tasks of living, and they could stay away from counsel's home for the duration of the trial to avoid exposure.

¶ 30 Counsel then alleged a second basis for finding a conflict that concerned the defense theory. He explained that he believed DiMarco acted under duress and based on a psychological exam, that she suffered from battered women's syndrome or Stockholm syndrome. He discussed the duress defense with her, but she denied ever being a victim of abuse or that the sexual assaults occurred. Both DiMarco and counsel said this disagreement had caused a "huge amount of conflict" to the "point where communications ha[d] basically broken down."

¶ 31 DiMarco then explained she disagreed with a duress defense because that was "saying I am guilty." She said she wanted to fire

defense counsel "over that." The court then conducted an advisement pursuant to *People v. Arguello*, 772 P.2d 87 (Colo. 1989), after which DiMarco stated she did not wish to represent herself if the court denied her motion.

¶ 32    In a thorough written order, the court denied DiMarco's motion. It reiterated its earlier findings concerning the COVID-19 allegation, and it noted that the potential impact of DiMarco's unvaccinated status was speculative since counsel attended court with numerous individuals without knowing their vaccination status. And it noted the issue was "easily resolvable" because counsel could avoid contact with his children during the trial.

¶ 33    Concerning the defense, the court found no conflict because the defendant had a constitutional right to pursue an "innocence-based defense," and counsel had to abide by her choice. [3]

¶ 34    After counsel said he would not sit next to DiMarco during the trial, the court set up the courtroom so that counsel could communicate with DiMarco during the trial while maintaining social distancing.

---

[3] DiMarco does not appeal the court's ruling precluding counsel from pursuing a duress defense.

¶ 35    We review a trial court's ruling on a motion for substitute counsel for an abuse of discretion.  *People v. Bergerud*, 223 P.3d 686, 696 n.4 (Colo. 2010).  A trial court abuses its discretion where its decision is manifestly arbitrary, unreasonable, or unfair, or is based on a misapprehension or misapplication of the law.  *People v Woodyard*, 2023 COA 78, ¶ 76 (citations omitted).  When a court erroneously denies a motion for substitute counsel and the defendant proceeds to trial with court-appointed counsel, we review for harmless error and will not reverse unless the defendant demonstrates a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.  *Bergerud*, 223 P.3d at 696.

¶ 36    The United States and Colorado Constitutions provide an indigent criminal defendant the right to representation.  U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *Faretta v. California*, 422 U.S. 806, 814 (1975); *People v. Alengi*, 148 P.3d 154, 159 (Colo. 2006).  While an indigent defendant has the absolute right to competent counsel, she "does not have the right to demand a particular attorney."  *People v. Hodges*, 134 P.3d 419, 425 (Colo.

15

App. 2005); *see Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) (finding that the right to counsel of choice does not extend to defendants for whom the court appoints counsel).

¶ 37     When an indigent defendant voices objections to court-appointed counsel, the trial court must investigate the reasons for the dissatisfaction. *Arguello*, 772 P.2d at 94. Before substituting counsel, the court must establish that the defendant has a well-founded reason for believing that court-appointed counsel will not provide competent representation. *Id.* Factors relevant to this inquiry include (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the defendant's complaint, (3) whether the attorney-client conflict is so great that it has resulted in a total lack of communication or prevented an adequate defense, and (4) the extent to which the defendant "substantially and unreasonably contributed" to the underlying conflict. *Bergerud*, 223 P.3d at 695. A conflict of interest exists when counsel's ability to champion the client's cause becomes substantially impaired. *Rodriguez v. Dist. Ct.*, 719 P.2d 699, 704 (Colo. 1986).

¶ 38     As relevant here, on issues of trial strategy, defense counsel is generally the "captain of the ship." *Arko v. People*, 183 P.3d 555, 558 (Colo. 2008). However, there are several constitutional limitations on defense counsel's ability to direct a trial, including whether to waive a jury trial, whether the defendant will testify, whether the defendant will plead guilty, and whether the defendant wishes to appeal. *Bergerud*, 223 P.3d at 694-95. Such decisions are for the defendant alone to make. *Id.*

### C.     Analysis

¶ 39     We begin with DiMarco's argument that her disagreements with counsel over the risk of COVID-19 exposure resulted in a breakdown of communication and required the appointment of substitute counsel. We discern no abuse of discretion in the court's finding of no conflict, for three reasons. First, as noted by the court, the record shows that counsel's concerns were speculative and centered around the *possibility* that he might contract COVID-19 from DiMarco and pass it on to his children. But as the court noted, counsel appeared in court regularly with individuals whose vaccination status was unknown to him. And counsel never alleged that he was immune compromised or faced a physical health risk.

Moreover, the risk to counsel's children was easily addressed by counsel having no contact with his children during the trial.

¶ 40     Second, we are not persuaded that counsel's fear of potentially passing COVID-19 to his family is like the cases on which DiMarco relies. *See United States v. Moore*, 159 F.3d 1154, 1159 (9th Cir. 1998); *People v. Avila*, 119 Cal. Rptr. 3d 657, 661-62 (Ct. App. 2011); *Aceves v. Superior Ct.*, 59 Cal. Rptr. 2d 280 (Ct. App. 1996). In all those cases, the defendant threatened counsel with physical violence, and counsel's apprehension of physical harm prevented communication with the client. Here, counsel's fear for his family arose from the possibility of exposure, not a direct threat of violence from DiMarco. And counsel told the court he would "love to try the case" but for the possibility of exposing his children to COVID-19.

¶ 41     Third, the record does not demonstrate a complete breakdown in communication. Indeed, it shows the opposite — that DiMarco and counsel communicated about the theory of defense and that they disagreed about the course to pursue. Counsel investigated the duress defense, and DiMarco chose instead to pursue an innocence-based defense. The court's ruling precluding the duress

18

defense resolved the strategy disagreement and thus, any potential conflict.

¶ 42    Finally, we find DiMarco's reliance on *State v. Gray*, No. 1 CA-CR 19-0457, 2020 WL 6286301, at *2–3 (Ariz. Ct. App Oct. 27, 2020) an unpublished opinion from Arizona State, unpersuasive because unlike that case, counsel's basis for moving to withdraw here concerned the risk to his immune compromised children, not himself.  Additionally, the motion to withdraw in *Payne* was filed at the beginning of the pandemic when little was known about the COVID-19 virus and no vaccinations existed.  In contrast, at the time of DiMarco's trial, vaccinations existed, the statewide mask mandate had been lifted, and in-person trials had resumed.

¶ 43    Accordingly, we discern no abuse of discretion in the court's ruling denying DiMarco's motion to substitute counsel.

### IV.    Counsel's Behavior

¶ 44    DiMarco next contends that counsel's behavior during trial, including his refusal to sit next to her at counsel table, his use of a KN-95 mask and face shield, and his repeated references to duress-related evidence in contravention of the court's order, deprived her of the right to due process and a fair trial.  We perceive DiMarco's

19

contention as one of ineffective assistance of trial counsel that needs further development of the record and therefore, we decline to address it for the first time on appeal. *People v. Kelling*, 151 P.3d 650, 655 (Colo. App. 2006) ("[B]ecause of the need for a developed factual record, an ineffective assistance of counsel claim should ordinarily be raised in a postconviction proceeding, not on direct appeal.").

## V. Severance of Defendants

¶ 45 DiMarco last contends that the trial court erroneously denied her motion for severance. She argues that she was entitled to severance as a matter of right because (1) she and the codefendant had antagonistic defenses, (2) she and the codefendant were charged differently and the numerous charges against him prejudiced her and would not have been admissible in a separate trial of her, and (3) joinder prejudiced her ability to present a defense.

### A. Additional Facts

¶ 46 DiMarco filed four pretrial motions to sever her case from the codefendant's. The first motion alleged that the codefendant's defenses were possibly antagonistic due to the complexity of the

20

evidence, and that the "sheer volume of the evidence" against the codefendant would "spill over into the case against her and cause prejudice."[4] The prosecutor responded that because the children's outcry occurred after being placed in foster care, the evidence was admissible to rebut any claim of recent fabrication and was also relevant to show that DiMarco was aware of her husband's abuse and encouraged the children to participate, as reflected in the conspiracy charge. The trial court denied DiMarco's motion, finding that there was extensive overlapping evidence relevant to conspiracy, that both defendants' decisions to pursue a general denial defense meant that they did not have antagonistic defenses, and that the evidence against the codefendant would be relevant and admissible against both of them to rebut a claim of recent fabrication. The court also found that any complexity could be remedied with appropriate jury instructions and determined that judicial economy and only requiring the child victims to testify once weighed against severance.

---

[4] The motion also alleged the prosecution would likely introduce evidence of the codefendant's violence toward a neighbor. The prosecutor responded that he had no intention of introducing this evidence.

¶ 47 DiMarco's second motion reasserted the claims in the first and added that defense counsel had recently learned of physical and psychological abuse perpetrated by the codefendant against DiMarco that could render their defenses antagonistic. The trial court denied the motion for the reasons previously stated, pending the production of any further evidence of antagonistic defenses.

¶ 48 DiMarco's third motion reasserted her earlier claims and added that because DiMarco had suffered abuse by her husband, requiring her to sit through a trial with her abuser would interfere with her ability to effectively assist in her defense. The prosecutor responded that DiMarco had not shown how her husband's abuse was relevant and admissible to any endorsed defense. The court agreed and denied the motion.

¶ 49 DiMarco's fourth motion raised the previous claims and added that the codefendant's abuse raised the legal defense of duress, which proved up their antagonistic defenses. The court denied this motion, too, because the duress defense issue was resolved by the court's hearing on counsel's motion for substitute counsel.

## B.     Standard of Review and Applicable Law

¶ 50     A defendant is entitled to severance as a matter of right if (1) there is material evidence admissible against one but not all the parties, and (2) admission of that evidence is prejudicial to the party against whom the evidence is not admissible. § 16-7-101, C.R.S. 2024; Crim. P. 14.

¶ 51     The party moving for severance bears the burden of showing that the evidence "was so inherently prejudicial that the jury could not have limited its use to a proper purpose." *People v. Johnson*, 30 P.3d 718, 725 (Colo. App. 2000).  In deciding actual prejudice, a reviewing court considers "(1) whether the number of defendants or the complexity of evidence is such that the jury will confuse the evidence and the law applicable to each defendant; (2) whether, despite admonitory instructions, evidence admissible against one defendant will improperly be considered against another; and (3) whether the defenses are antagonistic." *Id.* at 725-26.

¶ 52     "[I]f a defendant is *not* entitled to severance as a matter of right, then the district court has discretion as to whether to grant their motion for severance, and its 'decision will be affirmed absent a showing of abuse of discretion and actual prejudice to the moving

party.'" *People v. Black*, 2022 COA 127, ¶ 60 (quoting *Johnson*, 30 P.3d at 725); *see also Pelz v. People*, 728 P.2d 1271, 1275 (Colo. 1986). "The fact that the prosecution may have a stronger case against one defendant than against a co-defendant does not entitle the latter to a separate trial." *People v. Gregory*, 691 P.2d 357, 360 (Colo. App. 1984). "Nor does the fact that a defendant may have an inconsistent defense necessarily entitle [her] to a separate trial." *Id.*

## C. Analysis

¶ 53 We discern no abuse of discretion in the court's ruling, for five reasons. First, we conclude that DiMarco was not entitled to severance as a matter of right because "the evidence" used to prove the charges against the codefendant was the same evidence used to prove the two charges against DiMarco. Importantly, defense counsel never specified any particular evidence that would not have been admissible against DiMarco, nor did the court's ruling pertain to any particular piece of evidence. Instead, the court said it would deal with admissibility as the evidence was introduced and provide limiting instructions accordingly.

¶ 54 Additionally, DiMarco's brief does not identify specific evidence admitted at trial against the codefendant that was not admissible

against her, but instead refers to volumes of evidence related to the codefendant that were unrelated to the charges she faced. Therefore, we understand her argument about "the evidence" to relate to all the trial evidence. We conclude this evidence directly proved the charged offenses, and that the evidence related to children not named in the sexual assault charge occurred "contemporaneously with the charged offense and facilitate[d] the commission of it." *Rojas v. People*, 2022 CO 8, ¶ 44. Indeed, mutual participation in an offense is a logical basis for refusing to sever. *Gregory*, 691 P.2d at 360.

¶ 55 Second, to the extent the evidence implicated bad character, we further conclude that it was admissible against both defendants, under CRE 404(b), to rebut their claims that the children were not credible, were coached by their foster parents, and otherwise fabricated the allegations.

¶ 56 Third, we conclude that the codefendant's defenses were not antagonistic, as both claimed the children were not credible and that the abuse never occurred. While DiMarco also argued that she had no knowledge of any abuse committed by her husband, this argument was consistent with her husband's defense theory that

25

the abuse never occurred. And as to the conspiracy charge, she never conceded that the codefendant may have abused the children. Instead, she denied that any abuse occurred, so there was no crime to which she and the codefendant could have agreed.

¶ 57    Fourth, the court instructed the jury to consider each charge separately, and it provided limiting instructions. Thus, we reject DiMarco's contention that the jury assumed she was guilty by association and marriage to the codefendant. The jury's acquittal of DiMarco on the sexual assault charge and its question to the court concerning how to render a verdict demonstrate that the jury considered the evidence for each defendant separately. *Bondsteel*, ¶ 62 (finding verdicts and jury questions before verdicts evidenced the jury's ability to separate facts and law as to each offense and that no prejudice occurred); *People v. Braley*, 879 P.2d 410, 414-15 (Colo. App. 1993) (same). Moreover, to the extent DiMarco claims there was more and stronger evidence against her husband, and thereby prejudiced her, we conclude that does not provide a basis for severance. *People v. Manners*, 713 P.3d 1348, 1353 (Colo. App. 1985) (finding that severance not mandated where case against one codefendant stronger than the other).

¶ 58    Finally, we are not persuaded that DiMarco was unable to present her defense.  She asserts that she should have been able to defend against the conspiracy charge by presenting evidence that she was protecting her children from her husband.  However, such a defense was contrary to her innocence-based defense that the assaults never occurred.  And she does not separately challenge the court's ruling precluding her duress defense.

¶ 59    Accordingly, we discern no abuse of discretion in the court's denial of her motion for severance.

## VI.   Disposition

¶ 60    The judgment is affirmed.

JUDGE GROVE and JUDGE LUM concur.