JUSTICE GABRIEL delivered the Opinion of the Court.
¶ 1 This case requires us to decide whether a division of the court of appeals erred in concluding that the statutory right to self-defense can apply to justify a defendant's robbery of taxi cab services.[1] Prosecutors charged respondent Edward Kevin DeGreat with attempted second degree murder, first degree assault, and aggravated robbery arising out of an incident in which DeGreat did not pay his taxi fare after an altercation with a taxi driver. According to DeGreat, he initially intended to pay the fare but then realized that he was a few dollars short and offered to go into his apartment to retrieve the rest of the money. DeGreat claims that the driver then attacked him, the two began fighting, and when DeGreat believed he saw the driver brandish a weapon, he stabbed the driver in self-defense. Thereafter, the driver fled and DeGreat left the scene.
¶ 2 On these unique facts, we conclude that the division correctly determined that DeGreat was entitled to a self-defense instruction as to the aggravated robbery charge, although our reasoning differs from that on which the division relied. In our view, DeGreat presented some credible evidence to *543 allow a reasonable jury to conclude that the robbery of services that DeGreat allegedly committed was committed in self-defense.
¶ 3 Accordingly, we affirm the division's judgment, albeit based on different reasoning.
I. Facts and Procedural History
¶ 4 One evening, DeGreat and two neighbors shared a taxi ride home. When they arrived, the neighbors exited the cab, leaving DeGreat to pay the fare, as the passengers had agreed he would do.
¶ 5 The parties disagree about what happened next. According to DeGreat, when he attempted to pay the fare, he realized that he was four dollars short, and he told the driver that he would go get the remaining amount from his apartment. The driver asked DeGreat for his identification, DeGreat provided it to the driver, and the driver put it in his pocket. The driver then made a telephone call and locked DeGreat in the taxi. DeGreat asked the driver why he had locked the doors, and the driver responded that he had called the police. DeGreat, who had been sitting in the front passenger seat, then jumped into the backseat to try to get out of the locked taxi, after which the driver got out, unlocked the doors, and allowed DeGreat to get out. DeGreat reiterated that he would go get the money, but the driver responded that he should not leave because the police were on their way. DeGreat again said that he was going to get the money, and he turned around to go to his apartment.
¶ 6 According to DeGreat, the driver then grabbed him by the back of his shirt, and the two men began fighting. In the course of this altercation, DeGreat felt a burning sensation on his chin, saw blood on his shirt, and asked the driver if the driver had stabbed him. According to DeGreat, the driver then put his hand behind his leg, and DeGreat "saw something gleam in the [driver's] hand." The driver walked toward DeGreat and said, "I told you, you not going nowhere. I'm tired of this, people running off with my money.... I want all of my money." At that point, DeGreat decided that he needed to protect himself. So, he took a knife from his pocket and started swinging at the driver. DeGreat felt the knife hit the driver, after which the driver fled and DeGreat walked away toward his apartment.
¶ 7 The driver recalled the events differently. He claimed that after DeGreat had handed over his identification, he refused to get out of the car and became agitated. DeGreat then suddenly jumped into the backseat. The driver did not know what was going on, but he "knew it was not good in any case," and so he got out of the taxi. According to the driver, DeGreat then became more agitated, an altercation ensued, and DeGreat ultimately stabbed him, causing him to flee.
¶ 8 The People subsequently charged DeGreat with attempted second degree murder, first degree assault, aggravated robbery, and two crime of violence counts, and the case proceeded to trial. At trial, DeGreat admitted that he stabbed the driver and that he did not pay the driver for the taxi services. He asserted, however, that in doing so, he acted in self-defense.
¶ 9 At the close of the evidence, the trial court instructed the jury, as pertinent here, that self-defense is an affirmative defense to the attempted second degree murder and first degree assault charges, as well as to a number of lesser included offenses on which the jury was instructed. The court denied DeGreat's request for a self-defense instruction on the aggravated robbery charge, however, relying on People v. Beebe , 38 Colo.App. 80, 557 P.2d 840, 841 (1976), in which the division had concluded that "self-defense is not an affirmative defense to the crime of aggravated robbery," and People v. Laurson , 15 P.3d 791, 794 (Colo. App. 2000), which cited Beebe for the same proposition.
¶ 10 The jury ultimately convicted DeGreat of aggravated robbery, second degree assault-reckless, and two of the crime of violence counts. The jury acquitted DeGreat of the remaining counts.
¶ 11 DeGreat appealed, arguing, as pertinent here, that the trial court had erroneously refused to instruct the jury on self-defense in relation to the aggravated robbery charge. DeGreat contended that the trial court improperly relied on Beebe because, after that decision, Colorado courts, including this *544 court, had made clear that self-defense is an affirmative defense to specific and general intent offenses. In particular, DeGreat relied on this court's decision in People v. Pickering , 276 P.3d 553, 555 (Colo. 2011), in which we stated, "With respect to crimes requiring intent, knowledge, or willfulness, such as second-degree murder, self-defense is an affirmative defense." DeGreat asserted that because aggravated robbery is a general intent crime and he had offered evidence that he acted in self-defense, the trial court erred in refusing to instruct the jury on self-defense as an affirmative defense to robbery.
¶ 12 In a unanimous, published decision, a division of the court of appeals reversed DeGreat's aggravated robbery and related crime of violence convictions, remanded for a new trial on those counts, and otherwise affirmed the trial court's judgment. People v. DeGreat , 2015 COA 101, ¶ 57, --- P.3d ----. As pertinent here, relying on Pickering , the division concluded that self-defense could apply to any general intent crime, irrespective of the type of crime at issue. Id. at ¶¶ 11-13, --- P.3d at ----. The division thus concluded that because DeGreat presented evidence that his failure to pay was "entangled with his belief" that the use of physical force was necessary to defend himself from the driver's use of force, DeGreat was entitled to a self-defense instruction as to the aggravated robbery charge. Id. at ¶ 15, --- P.3d at ----. In so ruling, the division acknowledged the prior division's ruling in Beebe but observed that Beebe did not analyze the self-defense statute and was irreconcilable with Pickering . Id. at ¶ 16, --- P.3d ----.
¶ 13 The People petitioned this court for certiorari review, and we granted that petition.
II. Analysis
¶ 14 We begin by setting forth the applicable standard of review. We then discuss the statutes and case law related to robbery and self-defense. Finally, we apply this law to the facts before us.
A. Standard of Review
¶ 15 "Trial courts have a duty to instruct the jury on all matters of law applicable to the case." Roberts v. People , 2017 CO 76, ¶ 18, 399 P.3d 702, 704-05. We review jury instructions de novo to determine whether the instructions accurately informed the jury of the governing law. Id. at ¶ 18, 399 P.3d at 705. We consider all of the instructions given by the trial court together to determine whether they properly advised the jury. Id.
¶ 16 To present an affirmative defense for jury consideration, a defendant must present some credible evidence to support the claimed defense. People v. Garcia , 113 P.3d 775, 783-84 (Colo. 2005). Whether the defendant has met this burden presents a question of law, and we therefore review the sufficiency of the defendant's evidence de novo. Id. at 784.
B. Robbery and Self-Defense
¶ 17 Section 18-4-301(1), C.R.S. (2018), provides that a person commits the crime of robbery when he or she "knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation." A "thing of value," in turn, is expressly defined to include services. See § 18-1-901(3)(r), C.R.S. (2018).
¶ 18 A person commits aggravated robbery if, as pertinent here, during the act of robbery or immediate flight therefrom, the person "knowingly wounds or strikes the person robbed or any other person with a deadly weapon." See § 18-4-302(1)(b), C.R.S. (2018).
¶ 19 When a defendant properly presents an affirmative defense, the People must establish the guilt of the defendant beyond a reasonable doubt as to that issue and also as to the elements of the offense. § 18-1-407(2), C.R.S. (2018). Accordingly, when a defendant properly raises an affirmative defense, the nonapplicability of the defense effectively becomes an element of the offense that the People must prove beyond a reasonable doubt. See Pickering , 276 P.3d at 555.
¶ 20 Section 18-1-704(1), C.R.S. (2018), sets forth the pertinent elements of the affirmative defense of self-defense. That section provides, subject to exceptions not applicable to the question before us:
*545 [A] person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.
Id.
¶ 21 When asserting an affirmative defense, the defendant seeks to justify, excuse, or mitigate the commission of the charged act. See Pickering , 276 P.3d at 555.
¶ 22 As noted above, in order to have the jury instructed on self-defense as an affirmative defense, a defendant must present some credible evidence to support that defense. Garcia , 113 P.3d at 783-84. The defendant's burden in this regard is relatively lenient. Thus, a defendant may satisfy this burden even if the only supporting evidence is "highly improbable" testimony from the defendant himself or herself. Lybarger v. People , 807 P.2d 570, 579 (Colo. 1991) (quoting People v. Fuller , 781 P.2d 647, 651 (Colo. 1989) ).
C. Application
¶ 23 Here, on the unique facts presented, we conclude that DeGreat has presented some credible evidence to support his request for an instruction on the affirmative defense of self-defense in relation to the aggravated robbery count.
¶ 24 As an initial matter, we note that in concluding that DeGreat was entitled to a self-defense instruction as to the aggravated robbery charge, the division relied on our statement in Pickering , 276 P.3d at 555, that "[w]ith respect to crimes requiring intent, knowledge, or willfulness, such as second-degree murder, self-defense is an affirmative defense." DeGreat , ¶ 13, --- P.3d at ----. After the division issued its opinion in this case, however, we announced our opinion in Roberts . In Roberts , ¶ 27, 399 P.3d at 706, we clarified that Pickering did not establish a broad rule requiring trial courts to instruct the jury that self-defense is an affirmative defense to all crimes requiring a showing of intent, knowledge, or willfulness. We reasoned that the question before us in Pickering was whether the trial court had erred in instructing the jury that the prosecution did not bear the burden of disproving beyond a reasonable doubt the defendant's claim of self-defense to a charge of reckless manslaughter. Id. We concluded that the trial court's instruction was proper and did not impermissibly shift the People's burden of proof to the defendant. Id. Thus, in Roberts , we observed that Pickering did not require us to consider-and we did not consider-the range of cases in which self-defense is an affirmative defense, although we recognized certain types of cases in which it could be, such as second degree murder. Id.
¶ 25 For these reasons, although we understand and do not fault the division for relying on the above-quoted sentence from Pickering , we conclude that the division erred in relying substantially on that sentence to conclude that DeGreat was entitled to a self-defense instruction as to the aggravated robbery charge at issue here.
¶ 26 The question nonetheless remains whether, on the facts presented, DeGreat has satisfied his burden of introducing some credible evidence to support an instruction on self-defense as an affirmative defense to aggravated robbery.
¶ 27 In addressing this question, we acknowledge that the concept of committing robbery in self-defense may seem counterintuitive. Nonetheless, although this court does not appear to have considered the issue, other courts have opined that under certain circumstances, robbery may indeed be committed in self-defense. By way of example, a number of courts have concluded that acts of robbery are justified by self-defense when the defendant uses force to disarm an assailant and then flees with the assailant's weapon. See, e.g. , State v. Campbell , 214 N.W.2d 195, 197 (Iowa 1974) (noting that the defendant was justified in taking an assailant's gun from him and that no crime had occurred, as long as the defendant had used no more force than was necessary to disarm the assailant); State v. Antwine , 4 Kan.App.2d 389, 607 P.2d 519, 528-29 (1980) ("The taking and retention of a gun until it is safe to return it, however, is permissible where self-defense is justified.").
*546 Indeed, the parties before us appear to agree that such a scenario would support an instruction on self-defense as a defense to an aggravated robbery charge.
¶ 28 We also note that Colorado's statutory scheme for robbery might make scenarios like this more common than in some other states. In Colorado, unlike in many other jurisdictions, a robbery (1) arguably can be committed by omission, rather than commission (e.g., a failure to pay the victim);[2] (2) may involve a taking of services, rather than just property; and (3) can be committed upon a showing of knowing, as opposed to intentional, conduct. See §§ 18-1-901(3)(r), 18-4-301(1) (making clear that a knowing taking of services through the use of force can constitute robbery); see also People v. Moseley , 193 Colo. 256, 566 P.2d 331, 335 (1977) ("We therefore hold that robbery under section 18-4-301 requires no specific intent to permanently deprive the owner of the use or benefit of his property.").
¶ 29 Thus, unlike in some other states, in Colorado, a knowing omission amounting to the taking of services arguably can support a robbery charge, if the other elements of that crime are also satisfied. Compare §§ 18-1-901(3)(r), 18-4-301(1), and Moseley , 566 P.2d at 335, with Cal. Penal Code § 211 (West 2017) ("Robbery is the felonious taking of personal property in the possession of another....") (emphasis added), State v. Bartlett , 270 Or.App. 37, 346 P.3d 1240, 1242 (2015) (concluding that the failure to pay taxi cab fare could not form the basis of a robbery charge because taxi services are not property and the offense requires the taking of property), and Tex. Penal Code Ann. §§ 29.02, 31.01, 31.04 (West 2017) (limiting robbery to the theft of "property," which is defined separately from "services").
¶ 30 Accordingly, in Colorado, a robbery may be found to have been committed when, for example, a taxi cab passenger is physically attacked by the driver, uses physical force to defend himself or herself, and immediately flees without paying. In such a scenario, the passenger arguably would have taken the taxi services through the use of force. But the simultaneous taking and use of force in that scenario might also have been justified as a single act of self-defense.
¶ 31 Although we need not-and do not-express any opinion on the merits of DeGreat's defense, we conclude that he has presented at least some credible evidence to allow a reasonable jury to conclude that this case is like the just-described hypothetical. Specifically, DeGreat testified that (1) he used force to defend himself after the taxi driver had attacked him; (2) the driver fled as a result of DeGreat's justified use of force in self-defense; and (3) at the moment the driver fled, albeit due to DeGreat's justifiable use of force, DeGreat knowingly took taxi services without paying for them.
¶ 32 Stated otherwise, on the unique facts of this case, a reasonable jury could conclude that DeGreat committed robbery (knowingly taking taxi services through the use of force) but that this crime was justified because his knowing taking (failure to pay) and simultaneous use of force (which caused the driver to flee, thereby ending the driver's alleged assault) were done in self-defense.
¶ 33 For these reasons, although based on different reasoning, we conclude that the division correctly ruled that the trial court erred in refusing DeGreat's proffered instruction on self-defense as an affirmative defense to the aggravated robbery charge.[3]
¶ 34 In addition, we cannot say that the trial court's error was harmless. "If the trial court errs in disallowing an affirmative defense, then it improperly lowers the *547 prosecution's burden of proof." Garcia , 113 P.3d at 784. Moreover, we note that DeGreat was acquitted of each charge on which the jury was given the opportunity to consider his affirmative defense of self-defense, namely, attempted second degree murder, first degree assault, and several lesser included assault offenses. Accordingly, the jury may well have credited this defense when it had the opportunity to do so. The jury also acquitted DeGreat of the lesser nonincluded offense of theft, which also suggests that the jury may have credited DeGreat's version of events.
¶ 35 We therefore agree that DeGreat is entitled to a new trial on his aggravated robbery conviction and the related crime of violence charge.
¶ 36 In so concluding, we emphasize the narrow nature of our decision today. We conclude only that on the unique facts presented, DeGreat has introduced some credible evidence to allow a reasonable jury to find that he committed the alleged aggravated robbery in self-defense. We acknowledge that the People's evidence presents a very different version of what occurred and that were a jury to find this evidence more credible than DeGreat's testimony, the evidence would not support a claim of self-defense. Likewise, the conflicting evidence presented by the parties raises legitimate questions as to when the alleged robbery occurred, and the determination of these questions might well affect DeGreat's claim of self-defense. For example, depending on which version of the evidence one believes, DeGreat's use of force may have occurred either before or after the alleged robbery, thus undermining his claim that the robbery was committed in self-defense.
¶ 37 We express no view on any of these issues. Rather, these are fact questions that properly rest with the jury.
III. Conclusion
¶ 38 For these reasons, we conclude that on the unique facts of this case, the division correctly concluded that the trial court erred in refusing DeGreat's requested instruction on self-defense as an affirmative defense to the aggravated robbery charge. Accordingly, we affirm the division's judgment and remand this case with instructions that the division return this matter to the trial court for further proceedings consistent with this opinion.
CHIEF JUSTICE COATS dissents, and JUSTICE BOATRIGHT and JUSTICE SAMOUR join in the dissent.

Specifically, we granted certiorari to review the following issue:
Whether the court of appeals erred in concluding that the statutory right to use self-defense can apply to justify the taking of services in a robbery.

Although DeGreat noted, in passing, that a legitimate question exists as to whether inaction in failing to pay for services constitutes a "taking" for purposes of Colorado's robbery statute, he did not cross-petition for certiorari on that issue, and thus, the issue is not properly before us. Accordingly, for purposes of this case, we assume without deciding that the withholding of payment for taxi services can constitute a taking for purposes of the robbery statute.

To the extent that the court of appeals divisions' rulings in Beebe and Laurson can be read to suggest that self-defense can never be an affirmative defense to a charge of aggravated robbery, we disapprove of those rulings.