2022 CO 4 Thomas Pearson, Petitioner v. The People of the State of Colorado. Respondent No. 20SC463
Supreme Court of Colorado, En Banc
January 10, 2022
 
 1
 
 
 
 Certiorari to the District Court Arapahoe County District
 Court Case No. 18CV30951
 
 
 2
 
 
 Judgment Reversed
 
 
 
 Attorneys for Petitioner: Megan A. Ring, Public Defender
 Andrew P. Castle, Deputy Public Defender Centennial, Colorado
 
 
 
 Attorneys for Respondent: John Kellner, District Attorney,
 Eighteenth Judicial District Ann B. Tomsic, Chief Deputy
 District Attorney Susan J. Trout, Senior Deputy District
 Attorney Centennial, Colorado
 
 
 
 JUSTICE BERKENKOTTER delivered the Opinion of the Court, in
 which JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE GABRIEL,
 JUSTICE HART, and JUSTICE SAMOUR joined.
 
 
 3
 
 
 
 OPINION
 
 
 
 BERKENKOTTER JUSTICE
 
 
 ¶1
 Can a defendant charged with harassment (striking, shoving,
 kicking) claim self-defense as an affirmative defense? We
 address this issue in connection with our review of the
 district court's decision in People v. Pearson,
 No. 18CV30951 (Dist. Ct., Arapahoe Cnty., Apr. 28, 2020),
 affirming the county court's determination that Thomas
 Pearson was not entitled to a self-defense instruction, as a
 matter of law, with respect to his pending
 harassment[1] charge. We conclude that a defendant can
 assert self-defense as an affirmative defense to the crime of
 harassment so long as there is some credible evidence to
 allow a reasonable jury to find that they[2] acted with intent
 to alarm, as outlined in section 18-9-111(1)(a), C.R.S.
 (2021), as a means of self-defense. Accordingly, we reverse
 the district court's judgment and remand the case with
 instructions to return the matter to the trial court for
 further proceedings consistent with this opinion.
 
 
 I.
 Facts and Procedural History
 
 
 ¶2
 On June 1, 2017, Pearson was working as a courtesy tow-truck
 driver, providing roadside assistance on Interstate 225 when
 Timothy O'Kelly, another
 
 
 4
 
 
 motorist, changed lanes and pulled in front of Pearson's
 vehicle. The two men testified at trial and provided very
 different accounts of what happened next.
 
 
 ¶3
 According to Pearson, O'Kelly cut in front of
 Pearson's vehicle and flipped him off. Pearson then threw
 an air freshener at O'Kelly's car, which led
 O'Kelly to park in the middle of the highway and exit his
 vehicle. Pearson then parked behind O'Kelly's car,
 put on his hazard lights, and approached O'Kelly. Pearson
 testified that O'Kelly yelled and cursed as Pearson
 approached and that O'Kelly struck him in the face.
 Pearson recalled punching O'Kelly in the face one time in
 response but asserted that he did not use his full force.
 
 
 ¶4
 According to O'Kelly, he merged into Pearson's lane
 and soon after heard Pearson's "angry" honk, to
 which O'Kelly responded by flipping Pearson the middle
 finger. O'Kelly testified that Pearson began to tailgate
 him, forcing O'Kelly to brake abruptly due to surrounding
 traffic. O'Kelly then saw and heard a metal object hit
 his car. Believing that Pearson threw an object at him,
 O'Kelly stopped and opened his car door to photograph
 Pearson's vehicle in order to later file a complaint.
 Upon seeing O'Kelly exit his vehicle, Pearson exited his
 own and rapidly approached while screaming expletives and
 making threatening statements. O'Kelly put his arms out
 to prevent Pearson from getting too close. After several
 attempts, Pearson punched O'Kelly in the face, injuring
 him.
 
 
 5
 
 
 ¶5
 Pearson was arrested at the scene and was charged with
 assault in the third degree, criminal mischief, and
 harassment.
 
 
 ¶6
 Before trial, defense counsel notified the trial court that
 Pearson wanted to argue self-defense as an affirmative
 defense to the harassment and assault charges. As to
 harassment, the trial court stated:
 
 
 I don't understand how you could use-when you look at the
 elements of how affirmative defense could be used-the
 affirmative defense of self-defense be used against an
 elemental that reads "with intent to harass, annoy, or
 alarm another person." The State-the jury will either
 find that he did or didn't do that because of the
 situation that he found himself in, but it's not a
 self-defense issue when it comes to that.
 
 
 It's not something that the State should have to
 disprove. It's-it's really just how is the jury going
 to see the evidence in terms of was there intent to harass,
 annoy, or alarm. It-it doesn't go to the self-defense as
 we all think of it . . . .
 
 
 [I]t doesn't compute to give an affirmative defense along
 with an elemental that reads that the jury would have to find
 that the [d]efendant acted with intent to harass, annoy, or
 alarm with those three things. He has to either be trying to
 harass, annoy, or alarm.
 
 
 If he's not because he is defending himself, regardless
 of whether or not it's given as a self-an affirmative
 defense, they're not going to be able to find that.
 
 
 ¶7
 Ultimately, the court ruled that it would not allow Pearson
 to use the affirmative defense of self-defense with regard to
 the harassment charge, finding that the intent to harass,
 annoy, or alarm was mutually exclusive with the intent to
 defend oneself. Instead, the court concluded that
 self-defense was an element-
 
 
 6
 
 
 negating traverse to the crime of harassment that, if proven,
 would negate the requisite mens rea of the harassment charge.
 The court did, however, indicate that it would instruct the
 jury that self-defense was an affirmative defense to the
 assault charge.
 
 
 ¶8
 At trial, Pearson took the stand in his own defense and
 admitted that he punched O'Kelly but stated that he did
 so because he "was worried [O'Kelly] was going to
 keep going," and that he "didn't use all [his]
 force." Rather, Pearson testified, he only used enough
 force "to make sure [O'Kelly] didn't try to push
 [him] again."
 
 
 ¶9
 During the jury instruction conference, defense counsel again
 argued that the evidence showed that "Pearson was trying
 to alarm [O'Kelly] in self-defense and that's why a
 self-defense [affirmative defense] instruction should be
 given on harassment." In the alternative, due to the
 court's pretrial ruling, defense counsel requested an
 instruction stating that intent to defend oneself negates the
 intent to harass. The court similarly rejected that
 instruction, noting that such a conclusion would be
 "axiomatic" for the jury. Defense counsel continued
 his objection, arguing that, without an additional
 instruction, it was conceivable that a juror might vote to
 convict on the harassment charge while simultaneously
 believing that Pearson acted in self-defense.
 
 
 7
 
 
 ¶10
 Thus, limited by the trial court's ruling, defense
 counsel argued the element- negating traverse, noting during
 closings that the prosecution "charged [Pearson] . . .
 with the intent to harass, annoy, or alarm. But we know that
 that was not Mr. Pearson's intent. He told you, [he] was
 defending [himself] . . . ." The jury returned a verdict
 acquitting Pearson of the assault in the third degree and
 criminal mischief charges but convicting him of harassment.
 
 
 ¶11
 Pearson appealed to the district court, arguing that the
 trial court erred by ruling that self-defense was not an
 affirmative defense to harassment and by failing to properly
 instruct the jury. Pearson additionally argued that even if
 the trial court was correct in ruling that self-defense was
 an element-negating traverse, it still erred by failing to
 instruct the jury on the traverse pursuant to section
 18-1-704(4), C.R.S. (2021).
 
 
 ¶12
 The district court agreed with the trial court that Pearson
 could not simultaneously claim that he struck O'Kelly to
 both defend himself and alarm O'Kelly. In the
 district court's view, the ultimate result that Pearson
 was seeking under the circumstances could not have been to
 alarm O'Kelly. Consequently, the district court reasoned
 that "he cannot both assert that he acted in
 self-defense and admit the elements of the harassment charge,
 something that is a necessity in affirmative defenses."
 In reaching this conclusion, the district court stated that
 it "believe[d] that 'objective' or
 'intent' in the context of [the harassment statute]
 
 
 8
 
 
 means the main or ultimate objective or
 intent." The district court additionally held that the
 trial court was not required to provide a traverse
 instruction for the harassment charge because traverses
 generally do not require their own instructions unless the
 mens rea includes recklessness, criminal negligence, or
 extreme indifference. The district court thus affirmed the
 trial court's judgment.
 
 
 ¶13
 We subsequently granted Pearson's petition for
 certiorari.[3]
 
 
 II.
 Analysis
 
 
 ¶14
 We begin by outlining the applicable standard of review.
 Next, we discuss the distinction between affirmative defenses
 and traverses and their respective burdens of proof. Then we
 address the statute and case law related to the charge of
 harassment and discuss what is required for a defendant to
 assert a claim of
 
 
 9
 
 
 self-defense as an affirmative defense. We conclude by
 applying the law to the particular facts of the case before
 us.
 
 
 A.
 Standard of Review
 
 
 ¶15
 "Trial courts have a duty to instruct the jury on all
 matters of law applicable to the case." Roberts v.
 People, 2017 CO 76, ¶ 18, 399 P.3d 702, 704-05. And
 "[w]e review jury instructions de novo to determine
 whether the instructions accurately informed the jury of the
 governing law." Id. at ¶ 18, 399 P.3d at
 705. We must consider all the instructions provided by the
 trial court, together, to determine whether it properly
 advised the jury. People v. DeGreat, 2018 CO 83,
 ¶ 15, 428 P.3d 541, 544.
 
 
 ¶16
 In order to present an affirmative defense for the jury to
 consider, a defendant must offer "some credible
 evidence" to support the claimed defense. §
 18-1-407(1), C.R.S. (2021); People v. Garcia, 113
 P.3d 775, 783-84 (Colo. 2005). Whether a defendant has met
 this burden is a question of law, and we review the
 sufficiency of a defendant's evidence de novo.
 Id. at 784. If a defendant meets this standard, and
 a trial court refuses to give an affirmative defense
 instruction, then the prosecution's burden of proof has
 been impermissibly lowered, implicating a defendant's
 constitutional rights. See id. Such an error, if
 preserved, is subject to constitutional harmless error
 review. See Griego v. People, 19 P.3d 1, 8 (Colo.
 2001) (indicating that "when a trial court misinstructs
 the jury on an element of an
 
 
 10
 
 
 offense, either by omitting or misdescribing that element,
 that error is subject to constitutional harmless" error
 review). These errors necessitate reversal unless the error
 was harmless beyond a reasonable doubt. See Hagos v.
 People, 2012 CO 63, ¶ 11, 288 P.3d 116, 119.
 
 
 B.
 Affirmative Defenses and Traverses
 
 
 ¶17
 This court, generally, has recognized two types of defenses
 in criminal cases: (1) affirmative defenses and (2)
 traverses. People v. Pickering, 276 P.3d 553, 555
 (Colo. 2011). Ultimately, whether an asserted defense
 constitutes an affirmative defense or a traverse dictates the
 appropriate burden of proof. Roberts, ¶ 22, 399
 P.3d at 705.
 
 
 ¶18
 In asserting an affirmative defense, a defendant admits to
 the conduct that gives rise to the charged offense.
 Id. at ¶ 20, 399 P.3d at 705; People v.
 Huckleberry, 768 P.2d 1235, 1238 (Colo. 1989). And in
 such a case, a defendant essentially acknowledges
 "presence at and participation in the event" but
 claims that they were legally justified in doing so, and that
 justification is "sufficient to render the participant
 exempt from criminal responsibility."
 Huckleberry, 768 P.2d at 1239. When a defendant
 presents evidence properly raising an affirmative defense,
 the defense becomes an additional element of the charged
 offense, requiring the trial court to provide a jury
 instruction indicating that the prosecution must prove the
 defense's inapplicability beyond a reasonable doubt.
 Roberts, ¶ 22, 399 P.3d at 705.
 
 
 11
 
 
 ¶19
 Conversely, a traverse negates one or more elements of the
 offense, serving to undermine or cast doubt on the
 possibility that a defendant committed the charged offense.
 Id. at ¶ 21, 399 P.3d at 705. However, a
 defendant who presents evidence that negates one or more
 elements of the charged offense "is not entitled to an
 affirmative defense instruction." Id. at ¶
 22, 399 P.3d at 705 (quoting Pickering, 276 P.3d at
 555). Though, when a defendant is not entitled to an
 affirmative defense instruction for self-defense, a defendant
 may present evidence, when relevant, that they were acting in
 self-defense, and "the court shall instruct the jury
 with a self-defense law instruction." §
 18-1-704(4). Then it is up to the jury to consider the
 traverse evidence, along with the self-defense law
 instruction, to decide whether the prosecution has proven
 each element of the offense beyond a reasonable doubt.
 Roberts, ¶ 22, 399 P.3d at 705.
 
 
 ¶20
 With these principles in mind, we next review the underlying
 charge in this case-harassment-and the requirements that a
 defendant must satisfy to assert a claim of self-defense as
 an affirmative defense.
 
 
 C.
 Harassment and Self-Defense
 
 
 ¶21
 Under section 18-9-111(1)(a), when a person, acting
 "with intent to harass, annoy, or alarm another[, ] . .
 . [s]trikes, shoves, kicks, or otherwise touches a person or
 subjects [them] to physical contact," they commit the
 crime of harassment. To be convicted of harassment, a
 defendant must have the specific
 
 
 12
 
 
 intent to harass, annoy, or alarm. See §
 18-1-501(5), C.R.S. (2021) ("All offenses defined in
 this code in which the mental culpability requirement is
 expressed as 'intentionally' or 'with intent'
 are declared to be specific intent offenses.").
 
 
 ¶22
 A person acts in self-defense, under section 18-1-704(1), by
 "using physical force upon another person in order to
 defend himself or a third person from what he reasonably
 believes to be the use or imminent use of unlawful physical
 force by that other person." And in doing so, a person
 "may use a degree of force which he reasonably believes
 to be necessary for that purpose." Id. So long
 as a defendant "present[s] some credible evidence"
 to support the defense, a defendant is entitled to have the
 jury instructed on self-defense as an affirmative defense.
 DeGreat, ¶ 22, 428 P.3d at 545. And, as noted,
 the ultimate goal in presenting this affirmative defense is
 "to justify, excuse, or mitigate" a defendant's
 commission of the act. Id. at ¶ 21, 428 P.3d at
 545.
 
 
 ¶23
 Because a defendant must only present "some credible
 evidence" in support of the proffered defense, the
 burden is rather low. As this court has previously stated,
 "a defendant may satisfy this burden even if the only
 supporting evidence is 'highly improbable' testimony
 from the defendant . . . ." Id. at ¶ 22,
 428 P.3d at 545 (quoting Lybarger v. People, 807
 P.2d 570, 579 (Colo. 1991)). Ultimately, so long as a
 defendant has provided some credible evidence to allow a
 reasonable jury to conclude that the defendant committed the
 offense in
 
 
 13
 
 
 self-defense, that is sufficient to require a court to
 provide an affirmative defense instruction. See id.
 at ¶ 31, 428 P.3d at 546.
 
 
 D.
 Application
 
 
 ¶24
 So, can a person intend to alarm someone in self-defense? At
 first blush, the concept seems implausible, if not downright
 nonsensical. However, upon closer examination, we cannot
 conclude that the two concepts are always, in every
 circumstance, mutually exclusive. For example, some
 jurisdictions have found that a person may fire a warning
 shot into the air to alarm an initial aggressor while
 simultaneously doing so in self-defense (i.e., to prevent an
 altercation from escalating further). See, e.g.,
 State v. Hill, 433 S.E.2d 848, 849 (S.C. 1993)
 (holding that there was ample evidence that the defendant
 fired the gun into the air in self-defense to distract the
 alleged aggressor). Or, take for instance a circumstance in
 which a person kicks a car door to alarm or distract the
 initial aggressor so that they can then escape from an
 impending attack. See, e.g., People v.
 Coahran, 2019 COA 6, ¶¶ 1-2, 436 P.3d 617, 619
 (determining that the defendant acted in self-defense, and
 was thus entitled to an affirmative defense instruction, by
 kicking her ex-boyfriend's car door in order to escape an
 altercation). While those are not the particular facts before
 us, we are mindful that there are factual circumstances that
 could lead a reasonable jury to find that a defendant was
 acting
 
 
 14
 
 
 with the intent to defend themself by alarming their
 attacker. Indeed, that is what Pearson contends happened
 here.
 
 
 ¶25
 This court, in Roberts, did not address whether the
 charge of harassment, as a matter of law, is always
 inconsistent with self-defense, or whether the affirmative
 defense of self-defense could never apply to harassment.
 ¶ 29, 399 P.3d at 706. Similarly, the district court
 here concluded that, because Pearson's case was seemingly
 identical to Roberts, an interpretation as to the
 general applicability of self-defense as an affirmative
 defense to harassment was not necessary. See id.
 
 
 ¶26
 In reaching this conclusion, the district court reasoned that
 because Pearson did not admit that he struck O'Kelly with
 the main or ultimate intent to alarm him, rather
 than with the main or ultimate intent to defend
 himself, he did not properly admit every element of the
 offense. However, that was not this court's conclusion in
 Roberts. We have never required such an intent to
 subordinate the other; rather, we merely require both to be
 present and for one to justify, excuse, or mitigate the
 other. See, e.g., DeGreat, ¶ 21, 428
 P.3d at 545 (holding that asserting the intent to act in
 self-defense as an affirmative defense "seeks to
 justify, excuse, or mitigate" the intent required of the
 act, as well as other elements of the charge);
 Roberts, ¶ 20, 399 P.3d at 705 (same);
 Pickering, 276 P.3d at 555 (same);
 Huckleberry, 768 P.2d at 1238 (same).
 
 
 15
 
 
 ¶27
 Though the district court likened Pearson's case to
 Roberts in concluding that Pearson was not entitled
 to an affirmative defense instruction, we note some key
 distinctions. In Roberts, the defendant was charged
 with harassment following an incident with her estranged
 husband, in which she struck him in the face several times.
 ¶ 3, 399 P.3d at 703. Roberts's defense counsel, at
 the close of evidence, tendered a jury instruction providing
 that self-defense constituted an affirmative defense to the
 charge of harassment, which the trial court rejected.
 Id. at ¶¶ 8-10, 399 P.3d at 703-04. This
 was the correct ruling because, during trial, Roberts
 expressly denied striking her husband with the
 intent to harass, annoy, or alarm him. Id. at
 ¶ 7, 399 P.3d at 703. Rather, she stated that her
 only intent was "just to get as far away from
 him as [she] could." Id. (alteration in
 original).
 
 
 ¶28
 In this case, in contrast, Pearson testified that although he
 struck O'Kelly in the face, he did so "to make sure
 [O'Kelly] didn't try to push [him] again," and
 he purposely tempered the amount of force that he used.
 Defense counsel reiterated this point in closing argument.
 And while Pearson did not expressly testify that he struck
 O'Kelly because he intended to defend himself by alarming
 O'Kelly, the trial court had already rejected defense
 counsel's argument that the jury should be instructed as
 to self-defense in connection with the harassment charge, so
 admitting that particular element outright would have been at
 Pearson's peril.
 
 
 16
 
 
 ¶29
 The practical effect of this pretrial ruling was to box
 Pearson in, requiring that he either rely on self-defense as
 a traverse or not at all. That is, if Pearson admitted to
 possessing the intent to alarm, he couldn't also argue,
 as an element-negating traverse, that he didn't possess
 the intent to alarm. Thus, Pearson had no real alternative
 but to completely reverse course on his theory of the case.
 
 
 ¶30
 If Pearson had not been forced to change course, his
 testimony as to his intent in hitting O'Kelly would have
 been more than sufficient to warrant providing a self-defense
 as an affirmative defense instruction as to the harassment
 charge. We are also persuaded that, despite being
 strategically confined from arguing at trial that Pearson
 struck O'Kelly with the express intent to alarm him,
 Pearson presented sufficient evidence-satisfying his burden
 to present some credible evidence-to require the trial court
 to provide an instruction on self-defense as an affirmative
 defense to harassment. See DeGreat, ¶ 31, 428
 P.3d at 546. Pearson testified that, as he approached,
 O'Kelly was yelling and cursing at him and attempted to
 hit him. Pearson explained that he "was worried
 [O'Kelly] was going to keep going"; and so he
 "didn't use all [his] force" when he struck
 O'Kelly, just a reasonable degree of force "to make
 sure [O'Kelly] didn't try to push [him] again."
 Because Pearson can satisfy this burden even by way of his
 own testimony-despite how probable or improbable that
 testimony might be-this
 
 
 17
 
 
 evidence, alone, would be enough to afford Pearson the right
 to an affirmative defense instruction. Id. at ¶
 22, 428 P.3d at 545.
 
 
 ¶31
 While we cannot know how the jury might have viewed an
 affirmative defense instruction as to the harassment charge,
 we do know that the jury acquitted Pearson of the assault
 charge on which it did receive such an instruction. And
 though we do not express any opinion on the merits of
 Pearson's defense, we conclude that Pearson presented
 some credible evidence to allow a reasonable jury to find
 that he struck O'Kelly in the face with the intent to
 alarm and that he was justified in using such force, which he
 claimed to have tempered in self-defense. Thus, the trial
 court should have provided the jury with an instruction on
 self-defense as an affirmative defense to Pearson's
 harassment charge. And because such an error improperly
 lowered the prosecution's burden of proof, it was not
 harmless beyond a reasonable doubt. See Garcia, 113
 P.3d at 784.
 
 
 ¶32
 Under the circumstances of this case, we determine that the
 trial court should have instructed the jury on self-defense
 as an affirmative defense to the harassment charge, thus we
 need not address Pearson's contention as to a traverse
 instruction.
 
 
 III.
 Conclusion
 
 
 ¶33
 We conclude that a defendant can assert self-defense as an
 affirmative defense to the crime of harassment so long as
 there is some credible evidence to
 
 
 18
 
 
 allow a reasonable jury to find that they acted with intent
 to alarm, as outlined in section 18-9-111(1)(a), as a means
 of self-defense. We also conclude that the district court
 erred by affirming the trial court's determination that
 Pearson was not entitled to an instruction on self-defense as
 an affirmative defense to the harassment charge under section
 18-9-111(1)(a). Accordingly, we reverse the district
 court's judgment and remand the case with instructions
 that the district court return the matter to the trial court
 for further proceedings consistent with this opinion.
 
 
 CHIEF
 JUSTICE BOATRIGHT dissents.
 
 
 19
 
 
 CHIEF
 JUSTICE BOATRIGHT, dissenting.
 
 
 ¶34
 As Mike Tyson famously said: "Everybody has a plan until
 they get punched in the mouth."[1] That is because getting hit
 in the mouth evokes a myriad of emotions: fear, confusion,
 apprehension, anger, shock, and possibly many other emotions,
 including alarm. But make no mistake, when Thomas Pearson
 punched Timothy O'Kelly, Pearson's conscious
 objective was to stop O'Kelly from attacking him. He was
 not, as the majority posits, intending only to alarm
 O'Kelly. At that moment, Pearson wanted O'Kelly to
 get a new plan.
 
 
 ¶35
 Pearson testified that he punched O'Kelly because
 O'Kelly hit him in the face and he "was worried
 [O'Kelly] was going to keep going." But Pearson also
 testified that he "didn't use all [his] force,"
 only "enough to make sure [O'Kelly] didn't try
 to push [him] again." If his testimony is to be
 believed, then Pearson's punch was intended to deter
 O'Kelly from continuing his attack.
 
 
 ¶36
 However, in concluding otherwise-that Pearson's intent
 was to merely alarm O'Kelly-the majority holds that a
 "defendant can assert self-defense as an
 
 
 20
 
 
 affirmative defense to harassment, so long as there is some
 credible evidence to allow a reasonable jury to find that
 they acted with intent to alarm." Maj. op. ¶ 1.
 While I follow the logic of the majority, I disagree. Because
 I understand Pearson's conscious objective was to stop
 O'Kelly, his defense is not an affirmative defense to
 harassment. Rather, the defense traverses the intent element
 of harassment such that it negates the mens rea, effectively
 refuting the possibility that the defendant could be
 convicted of harassment. In my view, the trial court and
 district court correctly identified Pearson's defense as
 a traverse.
 
 
 ¶37
 As the majority accurately explained, this court has
 long-settled definitions of the two main defenses to criminal
 charges: affirmative defenses and traverses. See People
 v. Pickering, 276 P.3d 553, 555 (Colo. 2011)
 ("There are, generally speaking, two types of defenses
 to criminal charges . . . 'affirmative' defenses . .
 . [and] 'traverses' . . . ."); see also
 People v. Huckleberry, 768 P.2d 1235, 1238 (Colo. 1989).
 Affirmative defenses "admit the defendant's
 commission of the elements of the charged act, but seek to
 justify, excuse, or mitigate the commission of the act,"
 while traverses "effectively refute the possibility that
 the defendant committed the charged act by negating an
 element of the act." Pickering, 276 P.3d at
 555.
 
 
 ¶38
 Practically speaking, if the presented evidence raises the
 issue of self- defense as an affirmative defense, "the
 affirmative defense effectively becomes an
 
 
 21
 
 
 additional element," and the prosecution must prove each
 element of the charged offense beyond a reasonable doubt.
 Id. Additionally, the "trial court must
 instruct the jury that the prosecution bears the burden of
 proving beyond a reasonable doubt that the affirmative
 defense is inapplicable." Id. However, if the
 "presented evidence raises the issue of an elemental
 traverse, the jury may consider the evidence in determining
 whether the prosecution has proven the element implicated by
 the traverse beyond a reasonable doubt." Id.
 Thus, for a traverse, the jury may consider whether the
 evidence presented creates a reasonable doubt that an element
 of the charged offense has not been met.
 
 
 ¶39
 Here, the element implicated is the mens rea required for a
 harassment conviction. Harassment is, by definition, a
 specific intent crime because "the mental culpability
 requirement is expressed as 'intentionally' or
 'with intent.'" See § 18-1-501(5),
 C.R.S. (2021); § 18-9-111(1)(a), C.R.S. (2021)
 ("[A] person commits harassment if, with intent
 to harass, annoy, or alarm another person" that person
 "[s]trikes, shoves, kicks, or otherwise touches a person
 . . . ." (emphasis added)). "A person acts
 'intentionally' or 'with intent' when his
 conscious objective is to cause the specific result
 proscribed by the statute defining the offense," §
 18-1-501(5) (emphasis added), or when the person's
 "purpose [is] to accomplish a particular result,"
 In re Roose, 69 P.3d 43, 48 (Colo. 2003). Therefore,
 for the prosecution to prove the mens rea element of
 harassment beyond a reasonable doubt, it must
 
 
 22
 
 
 show that a person's "conscious objective" must
 be to harass, annoy, or alarm another person. And for the
 affirmative defense to apply, Pearson's intent in
 striking O'Kelly must have been to harass, annoy, or
 alarm O'Kelly.
 
 
 ¶40
 As such, the main inquiry thus becomes: What "particular
 result" did Pearson intend when he punched O'Kelly?
 More specifically, did Pearson intend his punch to result in
 O'Kelly stopping his attack? Or did Pearson intend his
 punch to only result in O'Kelly feeling alarmed? The
 answer to these questions, I submit, is the difference
 between an affirmative defense and a traverse.
 
 
 ¶41
 Although Pearson and O'Kelly each say the other struck
 first, at some point, it is undisputed that Pearson punched
 O'Kelly. Pearson testified that his purpose in punching
 O'Kelly was self-defense because he was worried that
 O'Kelly would strike him again. Further, Pearson
 testified that he only used enough force to ensure
 O'Kelly did not try to push him again. In short, Pearson
 testified that his conscious objective was to deter
 O'Kelly from continuing his attack. That was the
 result that Pearson intended.
 
 
 ¶42
 Hence, I believe the majority conflates Pearson's
 ultimate conscious objective when it states that Pearson
 "struck O'Kelly in the face with the intent to alarm
 . . . in self-defense." Maj. op. ¶ 31. He
 wasn't trying to merely alarm O'Kelly. Sure, by
 punching O'Kelly in the face, he may have, in
 fact, alarmed
 
 
 23
 
 
 O'Kelly[2]-but that was not his goal. Frankly, I
 believe that Pearson did not care what emotion O'Kelly
 felt when he was punched, so long as O'Kelly stopped his
 alleged attack. Or as Mike Tyson might put it: Pearson wanted
 O'Kelly to come up with a different plan.
 
 
 ¶43
 For that reason, I cannot agree with the majority that
 Pearson's conscious objective in this case was to alarm
 O'Kelly. Rather, in my view, Pearson's objective was
 ultimately to stop O'Kelly. Under my rationale, Pearson
 could present the exact same defense that he did at trial.
 The only difference would be how the jury is instructed.
 
 
 ¶44
 In sum, I disagree with the majority's holding that
 self-defense is an affirmative defense to harassment. Rather,
 self-defense traverses the intent element of harassment, such
 that it effectively refutes the possibility that the
 defendant could be convicted of harassment because it negates
 the mens rea.
 
 
 ¶45
 For the above reasons, I respectfully dissent. Accordingly, I
 would affirm the trial court and remand the case for further
 proceedings.
 
 
 24
 
 
 ---------
 
 
 Notes:
 
 
 [1] This opinion is limited to section
 18-9-111(1)(a), C.R.S. (2021). For ease of reading, we refer
 to this provision of the statute as "harassment"
 from here forward.
 
 
 [2] We are intentionally using the
 singular "they" and "their" throughout
 this opinion.
 
 
 [3] We granted certiorari to review the
 following issues:
 
 
 1. Whether the district court erred in finding no
 reversible error occurred where the trial court ruled that
 self-defense was not an affirmative defense to the
 specific-intent crime of Harassment, C.R.S. §
 18-9-111(1)(a), and failed to properly instruct the jury on
 the affirmative defense.
 
 2. If the trial court was correct in finding
 self-defense as an element-negating traverse rather than an
 affirmative defense, whether the district court erred in
 finding no reversible error occurred when the trial court
 failed to instruct the jury on such a traverse.
 
 
 
 [1] Mike Berardino, Mike Tyson
 Explains One of His Most Famous Quotes, SunSentinel,
 (Nov. 9, 2012),
 https://www.sun-sentinel.com/sports/fl-xpm-2012-11-09-sfl-mike-tyson-explains-one-of-his-most-famous-quotes-20121109-story.html
 [https://perma.cc/DVK4-SJ5L].
 
 
 [2] In my view, alarming an attacker alone
 does not guarantee that an attack will stop. In fact,
 alarming someone may escalate the situation. That is why the
 response to a stressful event, like getting punched in the
 face, is called the fight-or-flight response.
 
 
 ---------