23CA0337 Peo v Barnes 06-25-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0337
Arapahoe County District Court No. 22CR641
Honorable Ben L. Leutwyler III, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Michael Barnes,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE SCHOCK
Welling and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2026

---

Philip J. Weiser, Attorney General, Alejandro Sorg Gonzalez, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dilyn K. Meyers, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Michael Barnes, appeals his convictions for aggravated robbery and menacing.  He argues, among other things, that the district court reversibly erred by instructing the jury on the provocation exception to self-defense.  Because we agree, we reverse the convictions and remand for a new trial on those charges.[1]

## I.     Background

¶ 2     Dominique Thomas owned an old Ford Bronco that was parked in the parking lot of his apartment complex.  The vehicle was inoperable and had been "out of commission" for two years.

¶ 3     One evening, Thomas noticed the vehicle's hood was up, and there was a second battery connected with wires to the car battery.  There was a screwdriver in the ignition, and it appeared to Thomas that someone had been trying to steal the vehicle.  Thomas duct-taped the door shut (because it did not lock) and decided to keep his eye on the vehicle for the rest of the night.  A couple hours later, he saw two people "eyeing" it, but they left when he approached.

¶ 4     Later that evening, Thomas heard the Bronco running and ran outside, where he saw Barnes working under the hood and another

---

[1] Barnes does not challenge his conviction for first degree criminal trespass.  That conviction therefore remains undisturbed.

man standing nearby. Thomas went inside, got a rifle, and called the police, telling them that if they did not arrive in thirty seconds, he would "shoot these people that's trying to steal my car." As Thomas approached, the other man drove off in a van. Thomas then told Barnes to get away from the vehicle, but Barnes just looked at Thomas and went back to working on the vehicle.

¶ 5 Thomas decided to "knock [Barnes] out with the gun" rather than shoot him. As he swung the gun at Barnes's head, Barnes "sprung into action and put [Thomas] into a chokehold." During the ensuing tussle, Thomas took the clip out of his gun and put the gun down so he could break free. The two men then rolled to the ground and threw punches at one another before Barnes picked up the gun and ran to the other side of the sidewalk. According to Thomas, Barnes pointed the gun at him and "tried to pull the trigger" before realizing the gun was unloaded. Barnes then fled with the gun into the apartment complex, where he was arrested.

¶ 6 Barnes was charged with two counts of aggravated robbery (for taking the rifle), felony menacing (for threatening Thomas with the rifle), first degree criminal trespass of a motor vehicle, and a crime of violence sentence enhancer. At trial, his primary defense to the

2

aggravated robbery and menacing charges was that he took the rifle from Thomas in self-defense. A jury convicted Barnes as charged.

## II. Provocation Instruction

¶ 7 Barnes argues that the district court erred by instructing the jury on the provocation exception to self-defense because there was no evidence that he intentionally goaded Thomas into attacking him so that he would have a pretext to injure or kill him. We agree.

## A. Additional Background

¶ 8 In Barnes's post-arrest interview, he told an officer that he was working under the hood of the Bronco when Thomas "ran up on [him] and hit [him] in the back of the head with a gun" without announcing himself or saying anything first. Barnes said he "felt like [his] life was in danger," so he grabbed Thomas and threw him to the ground. During the tussle, Thomas "kept trying to go for the gun," and Barnes was trying to keep him away from it.

¶ 9 Barnes's theory of defense at trial was that he took the gun from Thomas in self-defense. The jury was instructed as follows:

> It is [Barnes's] theory of defense that he is not
> guilty of menacing and aggravated robbery
> because his actions after he was confronted
> and physically assaulted by [Thomas] were
> justified by the affirmative defense of self-

> defense because he used physical force and took the rifle from [Thomas] to defend himself from what he reasonably believed to be the use of physical force and used a degree of force that was necessary for the purpose of defending himself against [Thomas].

The district court also instructed the jury on self-defense.

¶ 10 The prosecution requested that the court instruct the jury on the provocation exception to self-defense — namely, that Barnes, "[w]ith intent to cause bodily injury or death to another person . . . provoke[d] the use of unlawful physical force by that other person." § 18-1-704(3)(a), C.R.S. 2025. Defense counsel objected, asserting that there was no evidence that Barnes provoked Thomas's use of force through words or physical action toward Thomas.

¶ 11 The district court did not directly address defense counsel's objection to the provocation exception, instead focusing its ruling on its denial of an initial aggressor instruction (which the parties addressed at the same time). But the court included the provocation exception in the self-defense jury instruction.

¶ 12 In closing argument, the prosecution told the jury that "this case is going to come down to whether or not you believe that by stealing the car, the defendant provoked the victim into acting."

4

The prosecutor continued: "In order for self-defense to apply, the defendant cannot provoke the fight . . . by trying to steal that car."

## B. Applicable Law and Standard of Review

¶ 13 When a defendant claims self-defense, one way for the prosecution to defeat that defense is by proving beyond a reasonable doubt that the provocation exception applies. *People v. Roberts-Bicking*, 2021 COA 12, ¶ 30. But the court may instruct the jury on the exception only if there is "some evidence" to support it. *Galvan v. People*, 2020 CO 82, ¶ 25. Although this threshold is low, it requires evidence that "would support a reasonable inference" that the exception applies. *Roberts-Bicking*, ¶ 31.

¶ 14 Under the provocation exception, a defendant forfeits the right to self-defense when, "[w]ith intent to cause bodily injury or death to another person, he provokes the use of unlawful physical force by that other person." § 18-1-704(3)(a). The exception has three elements: "(1) the other person uses unlawful physical force against [the defendant]; (2) the defendant provoked the use of such physical force by the other person; and (3) the defendant intended his provocation to goad the other person into attacking him in order to provide a pretext to injure or kill that person." *Galvan*, ¶ 19.

5

¶ 15    We review de novo whether some evidence exists to support a provocation instruction, viewing the evidence in the light most favorable to the giving of the instruction.  *Roberts-Bicking*, ¶ 32.

### C.    No Evidence to Support Instruction

¶ 16    We agree with Barnes that the record contains no evidence to support a provocation instruction in this case.  Even assuming that Barnes's apparent attempt to steal the Bronco could be deemed to have provoked Thomas to attack him, no evidence supports a reasonable inference that by attempting to steal the vehicle, Barnes intended "to goad [Thomas] into attacking him" so that he would have "a pretext to injure or kill [Thomas]."  *Galvan*, ¶ 19.

¶ 17    Viewing the evidence in the light most favorable to the prosecution, all Barnes did before Thomas attempted to hit him with the gun was work on the vehicle and fail to respond when Thomas told him to get away.  The clear implication was that Barnes was trying to steal the vehicle.  There was no suggestion that his intent was instead to get Thomas to come out of his apartment and attack him so Barnes could injure Thomas in response.  *See id.* at ¶ 31 ("[A]bsent evidence of the requisite intent, the provocation exception cannot defeat the affirmative defense of

6

self-defense."). There was no indication that Barnes knew Thomas or had any reason to harm him — much less through such a convoluted scheme. *See People v. Silva*, 987 P.2d 909, 913-15 (Colo. App. 1999) (holding that there was no evidence the defendant intended to provoke a fight to injure the victims where "there was no meeting or altercation between the two groups" before the fight); *cf. Galvan*, ¶ 33 (holding that there was evidence to support a provocation instruction where the charged assault followed a prior verbal altercation and unwanted sexual advances); *Roberts-Bicking*, ¶¶ 9, 40 (holding that there was evidence to support a provocation instruction where the victim had kicked the defendant out of his apartment and "previously threatened to physically harm him").

¶ 18    The People concede there was no evidence of the requisite intent before Thomas approached Barnes, disclaiming the prosecution's argument in the district court that Barnes's attempt to steal the car was enough. Now, the People argue that the provocation occurred when Barnes "looked at" Thomas and then continued working on the vehicle. They contend that "a reasonable jury could infer that Barnes's intent for ignoring [Thomas's] command to stop was so that he could commit a surprise attack."

¶ 19    Not only was this not the theory argued at trial, or the theory on which the instruction was given, but it is not a reasonable inference under the facts of this case. First off, for the provocation exception to apply, Barnes's intent had to be to get *Thomas* to attack him first — not simply to lull him into being vulnerable to a surprise attack by *Barnes*. *See People v. Rios*, 2014 COA 90, ¶ 47. But more to the point, the People's theory stretches the "some evidence" standard too far. The question is not simply whether Barnes's conduct may have actually provoked Thomas to attack him. It is whether Barnes's purpose in engaging in that conduct — now characterized as ignoring Thomas's verbal warning — was to create a *pretext* for injuring Thomas. *See Galvan*, ¶ 19. Given the lack of any prior interaction between the two, such an inference is not just "highly improbable"; it makes no sense. *Id.* at ¶ 24 (citation omitted); *see Castillo v. People*, 2018 CO 62, ¶ 64 n.8 ("[I]nferences may be drawn only from the facts in evidence and [m]ay not be based on mere speculation or conjecture." (citation omitted)).

¶ 20    We therefore conclude that the district court erred by instructing the jury on the provocation exception to self-defense.

## D. Harmlessness

¶ 21    When the district court erroneously instructs the jury on an exception to self-defense that lacks evidentiary support, we apply the nonconstitutional harmless error standard. *See Castillo*, ¶ 56. Under this standard, we will reverse "only if the error affects the substantial rights of the parties," meaning it "substantially influenced the verdict or affected the fairness of the trial proceedings." *Id.* at ¶ 57 (citation omitted). An error is not harmless if there is a "reasonable probability" that it contributed to the conviction. *People v. Schnorenberg*, 2025 CO 43, ¶ 52.

¶ 22    We conclude that the provocation instruction was not harmless for three reasons. First, one problem with an erroneously given instruction is that "jurors might try to fit facts" into that instruction. *Castillo*, ¶ 59. That risk was particularly acute in this case. Although there was no evidence that Barnes "provoked" Thomas's attack within the legal meaning of that term, there was ample evidence that his apparent attempt to steal the Bronco was the *cause* of the attack. There is a reasonable probability that a jury trying to fit the facts of this case into the instruction could have found (erroneously) that Barnes lost his right to self-defense

merely because he committed a crime that prompted Thomas to attack him. *Cf. People v. Chirico*, 2012 COA 16, ¶¶ 14, 18 (holding that instruction erroneously suggesting the defendant forfeited his right to self-defense by committing a crime was not harmless).

¶ 23 Second, the prosecutor's comments in closing argument played right into that concern. *See Castillo*, ¶ 60 (noting that errors in jury instructions can be "exacerbated by the prosecution's misleading comments during its closing argument" (citation omitted)). Not only did the prosecutor "rel[y] heavily" on the provocation instruction, *id.* at ¶ 63 — telling the jury the case would "come down to" provocation — but she urged the jury to apply it in the problematic, nonlegal sense suggested by the evidence.

¶ 24 Repeatedly, the prosecutor told the jury that Barnes "provoke[d] the fight . . . by trying to steal the car" — not because he *intended* to goad Thomas into attacking him, but because Thomas had a *right* to defend his property. In other words, the prosecutor argued that Barnes could not claim self-defense simply because he "started" the fight by attempting to steal the vehicle. Not one mention of Barnes intending to injure Thomas (or that such intent was required for the jury to find provocation). There is a

10

reasonable probability that a jury faced with the inapplicable exception and the prosecutor's incorrect framing of it could have concluded that Barnes's act of attempting to steal the car was provocation — a theory the People rightly abandon on appeal.

¶ 25  Third, there is a reasonable probability that a properly instructed jury could have found that Barnes acted in self-defense. *See People v. DeGreat*, 2018 CO 83, ¶ 27 (noting that acts of robbery may be justified by self-defense "when the defendant uses force to disarm an assailant and then flees with the assailant's weapon").  It is undisputed that Thomas approached Barnes with a rifle and swung it at Barnes's head, while Barnes was unarmed.  As Thomas approached, he told police he was about to shoot the people trying to steal his car.  Moreover, Barnes told police after his arrest that he "felt like [his] life was in danger" and was just trying to keep Thomas away from the gun.  And although Thomas may have had the right to use *reasonable* physical force to prevent the theft, he had no right to use unreasonable or deadly force.  *See* § 18-1-706, C.R.S. 2025.  Based on this evidence, a jury could reasonably have found that Barnes used force to defend himself from what he reasonably believed to be the use or imminent use of

11

unlawful force by Thomas, and that the degree of force he used was reasonably necessary for that purpose. *See* § 18-1-704(1).

¶ 26 The People insist the error was harmless because Barnes's theory of self-defense was "overwhelmingly undermined by the evidence." In doing so, they show only (perhaps overwhelmingly) that Barnes was attempting to steal the Bronco. But even if Barnes was trying to steal the vehicle and knew Thomas was its likely owner, Barnes would still have been entitled to act in self-defense if he reasonably believed Thomas's use of force *or imminent use of force* was unreasonable, deadly, or otherwise unlawful. *See People v. Toler*, 9 P.3d 341, 352 (Colo. 2000) ("[T]respassers do not forfeit their rights to self-defense merely by the act of trespassing.").

¶ 27 We also are unpersuaded that defense counsel cured any harm by telling the jury that (1) Barnes "was not doing this to intentionally cause injury or death to [Thomas], and that's what you have to find"; and (2) Barnes's attempt to steal the car was not provocation. Faced with an instruction that did not otherwise fit the facts of the case and the prosecutor's argument that attempting to steal the car *was* provocation, defense counsel's attempt to right

the ship does not foreclose a reasonable probability that the jury understood the exception exactly as the prosecution described it.[2]

¶ 28    Thus, because there is a reasonable probability that the erroneously given provocation instruction contributed to Barnes's aggravated robbery and menacing convictions, we reverse those convictions and remand for a new trial on those charges.

## III.    Other Issues

¶ 29    Barnes raises several other challenges to the jury instructions, but he asserts that we need not reach those issues if we reverse his convictions based on the provocation instruction.  We agree.

¶ 30    The parties dispute whether Barnes's other instructional challenges are preserved.  And although we tend to agree with Barnes that they were, we agree with the People that they were not articulated or developed in the district court in precisely the same manner or to the same degree as they are on appeal.  On remand,

---

[2] The People also argue that the error was harmless because the jurors did not "grapple with" the provocation instruction like the jury did in *Castillo v. People*, 2018 CO 62, ¶ 65.  But while a juror question about the exception might indicate the jury was "closely considering" the exception, *id.*, the converse is not necessarily true. The jury might not have asked a question because it believed it understood the instruction, in the sense argued by the prosecutor.

the parties and the district court will have an opportunity to better develop the record on these issues in light of this opinion. We thus cannot say the issues are likely to "arise in precisely the same posture" at a new trial. *People v. Gulyas*, 2022 COA 34, ¶ 29.[3]

¶ 31 As for Barnes's argument that his two aggravated robberies should merge, which the People concede, that issue could arise again only if Barnes is convicted of both counts after retrial and the district court does not merge them, despite the People's concession.

## IV. Disposition

¶ 32 Barnes's aggravated robbery and menacing convictions are reversed, and the case is remanded for a new trial.

JUDGE WELLING and JUDGE LUM concur.

---

[3] Because we are reversing Barnes's convictions based on the provocation instruction, we need not address his cumulative error argument either. *See Howard-Walker v. People*, 2019 CO 69, ¶ 25 (explaining that cumulative error may require reversal when no single error prejudices the defendant's substantial rights, but the combination of multiple errors does).